PALENKAS v WILLIAM BEAUMONT HOSPITAL

Docket No. 82496. Submitted April 8, 1986, at Detroit. Decided
August 17, 1987. Leave to appeal applied for.

Brian Palenkas was injured in an automobile accident and re-
ceived emergency medical treatment at William Beaumont
Hospital in Troy on December 21, 1977. James M. Lawson,
M.D., a plastic surgeon with staff privileges at Beaumont
Hospital, was called in for emergency treatment of Palenkas'
severely fractured lower jaw. Lawson continued to treat Palen-
kas after his discharge from the hospital. Palenkas consulted a
dentist in the summer of 1978 because he continued to experi-
ence pain in his jaw, shifting of his jaw, twisting and turning of
his teeth, and the presence of floating pieces of bone in his
mouth. The dentist referred Palenkas to an oral surgeon, who
subsequently saw Palenkas on September 19, 1978. The oral
surgeon performed three corrective surgical procedures involv-
ing Palenkas' jaw and teeth from the date of the initial consul-
tation to September 15, 1981. Palenkas also underwent pros-
thetic reconstruction of his teeth for the next 1½ years. On
October 27, 1982, Palenkas filed suit in Oakland Circuit Court
against Beaumont Hospital and Lawson. Plaintiff alleged that
Lawson was negligent in his treatment of plaintiff and that
Beaumont Hospital was negligent by improperly extending staff
privileges to Lawson, by failing to properly supervise Lawson
during his care and treatment of plaintiff, and by failing to
have assured that the hospital employees or other staff phyi-
cians properly cared for plaintiff during his stay at the hospital.
Plaintiff also sought to hold Beaumont Hospital vicariously
liable for the negligent acts and omissions of Lawson. Shortly
before trial, plaintiff settled his claim against Lawson for

REFERENCES

Am Jur 2d, Appeal and Error §§ 35, 702 et seq.

Am Jur 2d, Limitation of Actions § 470.

Evidence involving compromise or offer of compromise as inadmissi-
ble under Rule 408 of Federal Rules of Evidence. 72 ALR Fed
592.

Plantiff's right to appeal adverse judgment on one cause of action
as affected by acceptance of remittitur on another cause of action.
41 ALR Fed 856.

$200,000 under a settlement agreement which in part provided that plaintiff would indemnify Lawson for any amount Lawson might be required to pay the hospital, including actual attorney fees and costs arising out of plaintiff's claims. Defendant hospital raised, as an affirmative defense in its answer to the complaint, the expiration of the statutory period of limitations for medical malpractice claims. However, defendant hospital made no pretrial motion for accelerated judgment based on the statute of limitations. The matter proceeded to trial before a jury, where, after plaintiff had presented his case, defendant hospital made a motion for accelerated judgment based on the statute of limitations. The trial court, Hilda R. Gage, J., rather than ruling on the motion, took it under advisement and allowed the case to proceed without ruling on the issue whether the period of limitations had in fact expired before plaintiff filed suit. The jury found defendant hospital negligent and awarded plaintiff $1,250,000 in damages. With respect to defendant hospital's indemnity claim against Lawson, the jury found that the negligence of defendant hospital was not based completely and solely on its responsibiity for the negligent conduct of its agent, Lawson. Defendant hospital renewed its motion for accelerated judgment based on the statute of limitations, which the trial court eventually denied, ruling that, by failing to file a pretrial motion, defendant had waived the issue. The trial court also reduced the jury's $1,250,000 award to plaintiff to $800,000 pursuant to a motion for remittitur filed by defendant hospital. Defendant hospital appealed, claiming error in the trial court's ruling on its motion for accelerated judgment and in the trial court's refusal to permit defendant hospital to elicit testimony from Lawson, whom it had called as a witness, regarding the terms of his settlement agreement with plaintiff in an attempt to show Lawson's interest, bias and prejudice in favor of plaintiff. Plaintiff cross-appealed, claiming the trial court erred in reducing the jury's award of damages.

The Court of Appeals *held:*

1. Where, as in this case, a jury trial was demanded, accelerated judgment under then in effect GCR 1963, 116.1(5) based on the expiration of the period of limitations could not properly be granted where there was a factual dispute regarding when discovery of the cause of action occurred or reasonably should have occurred. In such a case, the discovery issue was a question of fact to be decided by the jury. Thus, it made no difference whether or not defendant hospital had filed a pretrial motion for accelerated judgment since the issue of discovery was ultimately for the jury to decide. The trial court erred

in precluding a jury determination of this issue by taking defendant hospital's motion under advisement. The Court of Appeals reversed the trial court's ruling in this regard and ordered a remand for a determination of the statute of limitations issue on its merits. The Court noted that an unresolved conflict among its decisions exists as to whether, under the Michigan Court Rules of 1985, a statute of limitations question must be decided by a jury where a jury trial has been demanded or can be decided by the trial judge as a preliminary question. The Court of Appeals thus gave the trial court in this case the options of impaneling a jury to conduct a mini-trial culminating in a special verdict on the statute of limitations issue or conducting a nonjury evidentiary hearing to make findings of fact and conclusions of law upon which to base a determination.

2. The Court of Appeals could not determine whether the trial court abused its discretion in refusing to permit defendant hospital to question Lawson regarding his settlement agreement with plaintiff; the record was devoid of any indication of a pretrial motion in limine or a ruling thereon, under which defendant hospital claimed to have received the trial court's permission to present evidence of Lawson's settlement.

3. The amount awarded by the jury to plaintiff was within the range of the evidence and within the limits of what reasonable minds would deem just compensation for the injury sustained. The Court of Appeals therefore refused to disturb the verdict, reversed the trial court's order of remittitur, and reinstated the verdict.

Affirmed in part and reversed in part.

1. LIMITATION OF ACTIONS — STATUTE OF LIMITATIONS — SUMMARY DISPOSITION — JURY.

A factual dispute regarding when discovery of a cause of action occurred or reasonably should have occurred, for purposes of a statute of limitations in a case where a jury trial has been demanded and a motion for summary disposition based on the expiration of a period of limitations was made, may, at the option of the trial court, be decided by a jury or by the trial judge as a preliminary question.

2. TRIAL — DIRECT EXAMINATION — SCOPE OF EXAMINATION — APPEAL.

In general, the permissible scope of examination on a collateral matter is left to the sound discretion of the trial judge and will not be disturbed on appeal unless the trial judge abused that discretion.

3. Evidence — Settlements.

   Evidence of a prior settlement with another defendant is immaterial and inadmissible where a plaintiff makes known his willingness to allow the trial court to make all necessary postverdict adjustments to a jury award.

4. Trial — Remittitur.

   A trial court may not substitute its judgment on damages for that of the jury unless a verdict has been secured by improper methods, prejudice or sympathy or, alternatively, if the verdict is so clearly excessive as to shock the judicial conscience; as long as the amount awarded is within the limits of what reasonable minds would deem just compensation for the injury sustained, the verdict should not be disturbed.

5. Appeal — Trial — Remittitur.

   A trial court's decision to grant remittitur will be reviewed on appeal for an abuse of discretion.

*Fieger & Fieger, P.C.* (by *Geoffrey N. Fieger*), for plaintiff.

*Sullivan, Ward & Bone, P.C.* (by *Michelle A. Thomas*), for William Beaumont Hospital.

Before: Beasley, P.J., and D. E. Holbrook, Jr., and D. L. Sullivan,* JJ.

Beasley, P.J. In this medical malpractice case, defendant, William Beaumont Hospital, appeals as of right from a judgment entered on a jury verdict in favor of plaintiff, Brian Palenkas. By leave granted, plaintiff cross-appeals from an order of remittitur of the verdict from $1,250,000 to $800,000.

On appeal, defendant hospital raises two issues, and plaintiff raises one issue on cross-appeal. We reverse the trial court as to the statute of limitations issue raised by defendant and remand that matter for evidentiary hearing and decision by the trial court. As to the other issue raised by defen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dant hospital, we affirm the trial court. As to the issue raised by plaintiff on cross-appeal, we reverse the trial court's order of remittitur.

The parties essentially agree as to the underlying facts. On December 21, 1977, plaintiff was involved in a car accident which resulted in several serious, traumatic injuries. Taken to the emergency room at Beaumont Hospital-Troy, plaintiff received treatment from a team of specialists called in by Beaumont. Among those treating physicians was defendant, Dr. James M. Lawson, a plastic surgeon who had staff privileges at Beaumont and was on call that evening. Dr. Lawson was called in to treat plaintiff's severely fractured lower jaw and injured teeth. During plaintiff's stay at Beaumont, Dr. Lawson assumed the primary care for the treatment of plaintiff's jaw. It was undisputed at trial that during plaintiff's stay at the hospital Dr. Lawson was absent from the hospital for several days and failed to notify the hospital or obtain another physician to assume plaintiff's care. Following plaintiff's discharge from the hospital, Lawson continued to treat plaintiff for his jaw injury.

In the summer of 1978, plaintiff went to a dentist because, despite his continued treatment with Lawson, he continued to experience pain in his jaw, shifting of his jaw, twisting and turning of his teeth, and the presence of floating pieces of bone in his mouth. The dentist advised plaintiff that his jaw was collapsing and referred him to an oral surgeon.

The oral surgeon first saw plaintiff on September 19, 1978, and found that plaintiff had a deficient bite, a misshapen face, broken teeth that had not been removed, sequestered pieces of bone in the front lower jaw, and a tooth intruding into the jaw bone. He also found that plaintiff's right lower

jaw had tipped inward and that the collapse was not allowing the teeth to properly align in plaintiff's mouth. Three times during the next year he performed surgery on plaintiff's jaw, which included removing the sequestered pieces of bone and broken and loose teeth, grafting a piece of bone from plaintiff's hip to his jaw, and repositioning his jaw. The last such surgical procedure took place on September 15, 1981, after which, for the next 1½ years, prosthetic reconstruction was performed on plaintiff's teeth.

On October 27, 1982, plaintiff filed a complaint against defendants Beaumont and Dr. Lawson, alleging that Lawson was negligent in his treatment of plaintiff and that Beaumont was negligent by improperly extending staff privileges to Dr. Lawson, by failing to properly supervise Dr. Lawson during his care and treatment of plaintiff, and by failing to have assured that the hospital employees or other staff physicians properly cared for plaintiff during his admission. Plaintiff also sought to hold Beaumont vicariously liable for the negligent acts and omissions of Dr. Lawson.

In answer to plaintiff's original complaint, inter alia, defendant hospital asserted, by way of affirmative defense, that plaintiff's claims were barred by expiration of the period of limitations. Prior to trial, this motion was never heard and decided. While the reasons for the trial court's failure to hear and decide this motion are in dispute and will be further discussed, it seems altogether clear that this defense was not intentionally abandoned by defendant hospital.

As indicated, the automobile accident which gave rise to plaintiff's serious injuries and to these malpractice claims occurred on December 21, 1977, after which plaintiff was a patient in Beaumont Hospital-Troy. Plaintiff was last treated by the

hospital at the time of release from the hospital in January, 1978. Not until October 27, 1982, did plaintiff start this suit against defendants, Dr. James M. Lawson and William Beaumont Hospital. Apparently plaintiff claims that he did not discover that he had a malpractice claim until May or June, 1982, which, if established, would just barely bring plaintiff within the six-month period when he started suit on October 27, 1982. But, that is not the issue here because the trial judge never did decide the statute of limitations issue on its merits.

Although asserting the defense of the statute of limitations in its answer to the original complaint and to the amended complaint, defendant hospital did *not* file a motion for accelerated judgment and seek to bring it on for hearing. During trial in June, 1984, at the conclusion of presentation of plaintiff's case, in the absence of the jury, and before presentation of its case, defendant hospital moved for accelerated judgment on the ground that the period of limitations had run before plaintiff started suit. Defendant hospital argued that plaintiff had not proved that he started suit within six months of the date of discovery of the hospital's alleged malpractice, as required by MCL 600.5838(2); MSA 27A.5838(2). Defendant hospital claimed that the burden of proof was on plaintiff to establish when he discovered the malpractice because it was obvious that he did not start suit within two years of the date of the final treatment in defendant hospital in January, 1978, and, therefore, needed to establish that he started suit within six months of discovery of the malpractice or when he should have discovered the malpractice. Thus, defendant hospital claimed there was no issue of fact for the jury and it became a question of law for the court.

Plaintiff responded by claiming he was prepared to prove he first learned of the malpractice by defendant hospital when his attorney advised him in October, 1982. Plaintiff requested that he be allowed to reopen his case to prove these facts. The trial judge refused to permit plaintiff to reopen and noted that, when defendant asserted the affirmative defense of the statute of limitations, the burden was on plaintiff to show that he started suit within six months of his discovery of the hospital's malpractice. But, rather than ruling on the matter, the trial judge took the matter under advisement.[1] There was no suggestion by the trial judge at that time that she did not intend ever to rule on the merits of the motion. At that time, GCR 1963, 116.1(5) and 116.3 provided:

> .1 Grounds. In a party's first responsive pleading, or by motion filed not later than his first responsive pleading, a party may demand that service of process be quashed or that judgment be entered dismissing 1 or more claims asserted against him upon any of the following grounds:
>
> \* \* \*
>
> (5) the claim is barred because of . . . statute of limitations . . . .
>
> \* \* \*
>
> .3 . . . As to defenses and objections based upon

[1] Specifically, the court said:

*The Court:* (Interposing): Mr. Fieger [Attorney for Plaintiff], you have already argued that. Let me just tell you, sir, that Plaintiff's pleadings don't make the case. It is the time when you put on your proofs which makes the difference. They pled the statute of limitations and accelerated judgments are granted all the time in face of pleadings but this is rather unique in that he let you put on your best shot and you have done it. He has a cogent argument and it is very persuasive.

I am *not going to rule on it right now. I want to review some* applicable case law. We're now moving on to the defense case.

subrule 116.1(5), the court may order immediate trial of any disputed questions of fact, and judgment may be rendered forthwith if the proof shows that the moving party is entitled to judgment on the facts as determined; or the court may postpone the hearing on the matter until the trial on the merits, and shall postpone the hearing if a jury trial has been demanded pursuant to right on or before the day of the hearing.

Trial then resumed and the case eventually went to the jury without a ruling by the trial judge regarding defendant hospital's motion for accelerated judgment on the ground that plaintiff's claim was barred by the expiration of the period of limitations. Since the trial judge was holding the motion under advisement, it would seem that neither plaintiff nor defendant at that point was in a position to seek a special verdict from the jury regarding the statute of limitations question. On the other hand, neither plaintiff nor defendant hospital requested a jury instruction on the statute of limitations issue and both expressed approval of the jury instruction that was given.[2] After the jury rendered special verdicts, defendant renewed its motion for dismissal by virtue of the statute of limitations, and the trial judge requested both sides to file briefs regarding the motion.

Later, on September 12, 1984, after receiving and reviewing the briefs, the trial court denied the hospital's motion for accelerated judgment, ruling that by failing to seek a hearing on its motion prior to trial defendant had waived its affirmative defense resting on the running of the period of limitations. The court said, in part:

There is no question that where undisputed facts

[2] Counsel for defendant hospital had one minor reservation to the jury instruction, which is not relevant to this discussion.

reveal the malpractice claim is barred by the Statute of Limitations, the question of when plaintiff discovered or should have discovered the claim becomes a question of law. That's when we're dealing with undisputed facts.

In this case, undisputed facts do not establish that the plaintiff realized at an earlier time that defendant had breached their standard of care. The record is silent in that regard and the record clearly establishes no evidence that would support a finding that the plaintiff had reason to believe there was a violation of the standard of care.

It is silent. He didn't establish that in any affirmative testimony that I heard.

The defendant argues that the burden of proof was on the plaintiff to show that he neither discovered nor should have discovered and he failed to meet that burden. That may be true but what we have here is a situation where the defendant properly raised the Statute of Limitations in its first responsive pleadings and never did another thing.

Never motioned it up, never raised it in anything further that this Court could discover and never pursued their legal position on the Statute of Limitations.

They allowed the matter to proceed right into trial, and that makes it distinguishable from the case they relied upon saying that the issue was not waived.

\* \* \*

[Defendant] led the plaintiff into preparing a case and proceeding on a case that they assumed would go to the jury on the issue of malpractice. Now, the purpose of the 116 accelerated judgment motion and the purpose of the Statute of Limitations is to have this matters [sic] disposed of timely without all of the costs relative to discovery and trial and that's why we have motions for accelerated judgment.

\* \* \*

Thus, because of the late bringing of that motion

after the plaintiff had offered all of its proofs, this Court feels that the matter was not given the proper legal priorities such that it could have been submitted to the jury.

\* \* \*

The Court believes that the undisputed facts did not establish that the plaintiff realized at an earlier time that the defendant had breached the standard of care and therefore it's not a matter of law, it was not submitted to the jury.

Defense did not ask it to be submitted to the jury, the plaintiff did not ask it be submitted to the jury. Therefore, the Court feels that the jury's verdict will stand that the issue was abandon [sic] by the defense and judgment shall enter in favor of the plaintiff as was demonstrated by the verdict of the jury.

There are difficulties in accepting this analysis. First, GCR 1963, 301.1, then in effect, required the trial court to hold a pretrial conference, unless waived in writing.[3] Also using mandatory language, GCR 1963, 301.3 required the trial judge to prepare and file a pretrial summary, providing, among other things:

The judge shall prepare, file, and cause to be served upon the attorneys of record, at least 10 days in advance of trial, a summary of the results of the pretrial conference specifically covering each of the items herein stated. The summary of results controls the subsequent course of the action unless modified at or before trial to prevent manifest injustice. The court may provide by rule a pretrial calendar on which actions may be placed for consideration and may also by rule amplify or modify the pretrial procedure as herein provided in the furtherance of justice but not in conflict with these rules. *No party shall be deprived of the right to present competent proof at*

---

[3] See GCR 1963, 301.8.

*the trial in support of any issues raised in the
pleadings unless such issues have been expressly
waived at the pretrial conference and such waiver
is recorded in the said summary of results.* [Emphasis added.]

However, attempting to obviate the necessity of
holding a pretrial conference in every case, the
Oakland Circuit Court promulgated its own Local
Rule 7, which provided that GCR 1963, 301.1
through 301.7 would only be applicable in civil
cases where ordered by the court. The Supreme
Court approved the local court rules. In this case,
the file does not indicate a pretrial conference was
held, and no pretrial summary was filed. This was
unfortunate because if a pretrial conference had
been held, it would most certainly have dealt with
the statute of limitations issue raised by the parties in their pleadings.

Thus, in the absence of a pretrial conference or
summary, defendant hospital was *not* deprived of
its right to offer evidence in support of the affirmative defense of the statute of limitations that had
been raised in the pleadings. Second, while we
believe that it would have been better practice for
defendant hospital to praecipe for hearing a motion for accelerated judgment based on expiration
of the period of limitations, we do not believe that
failure to do so in advance of trial in a case where
a jury was demanded would constitute a waiver or
abandonment of the affirmative defense of the
statute of limitations.

If defendant had praeciped for hearing a statute
of limitations motion in advance of trial, GCR
1963, 116.3, quoted above, would have dictated the
procedure to follow. In *Wallisch v Fosnaugh,*[4] we
held that, where a plaintiff has demanded a jury

[4] 126 Mich App 418, 424; 336 NW2d 923 (1983).

trial, accelerated judgment under GCR 1963, 116.1
(5) should *not* be granted if there are factual
disputes regarding when discovery was made or
reasonably should have been made. Since the trial
judge apparently believed the statute of limita-
tions issue depended upon a disputed fact, namely
as to when plaintiff discovered or should have
discovered the malpractice, she presumably would
have had an alternative. Either she could have
impaneled a jury for the sole purpose of hearing
the statute of limitations issue or she could have
waited until trial and then given that jury the
statute of limitations issue.

In practice, very seldom, if ever, is a jury impan-
eled solely to hear and decide a statute of limita-
tions issue.[5] If the trial judge had followed the
customary procedure under GCR 1963, 116.3, the
statute of limitations issue would have been held
for submission to the jury at trial. Of course, this
is what defendant did, namely, to raise its motion
during trial after completion of plaintiff's proofs.
Thus, we do not see that under the facts of this
case where plaintiff demanded a jury trial[6] it
would have made any difference whether defen-
dant had brought its statute of limitations motion
on for hearing earlier. Under cases like *Jackson v
Vincent,*[7] plaintiff or defendant would have been
entitled to a jury trial on the disputed fact upon
which determination of the statute of limitations
issue depended. Under the invariable procedure in
that situation, the same jury which would have
heard the case on the merits would have heard the
statute of limitations issue.

[5] In the author's experience as a trial judge and trial attorney,
never has a jury been specially impaneled to hear only a statute of
limitations issue.

[6] In its answer, defendant hospital alleged that it relied upon
plaintiff's demand for a jury trial.

[7] 97 Mich App 568; 296 NW2d 104 (1980).

In fact, it can be argued that one interpretation of GCR 1963, 116.1(5) and 116.3 required holding the question for the jury hearing the case on the merits. When, confronted by defendant's motion, the trial judge elected to take defendant's motion under advisement, rather than to decide it, she precluded both defendant hospital and plaintiff from obtaining a jury determination of the statute of limitations question. Under these circumstances, it was error to hold that defendant hospital had waived and abandoned the defense of the statute of limitations. Defendant hospital was entitled to a ruling on the merits of its motion based on the statute of limitations.

Consequently, we reverse the trial court's finding that defendant hospital waived the affirmative defense of the statute of limitations and remand this issue to the trial court for determination of the statute of limitations issue on its merits. In so doing, we are aware that there is now a split in the Court of Appeals on the question whether, under the new court rules of 1985, a statute of limitations question must be decided by a jury where plaintiff has demanded a jury trial or can be decided by the trial judge as a preliminary question.[8] In *Blana v Spezia*,[9] we held that statute of limitations questions should be treated as preliminary questions to be decided by the trial judge after an appropriate evidentiary hearing with full findings of fact and conclusions of law. However, until the Supreme Court reconciles this conflict in our decisions, a trial judge has a choice either to submit the question to a jury for determination, or to treat it as a preliminary question and to decide

[8] *Leyson v Krause*, 92 Mich App 759, 764-765; 285 NW2d 451 (1979), and *Jackson, supra*, represent one view, and *Blana v Spezia*, 155 Mich App 348; 399 NW2d 511 (1986), represents another view.

[9] *Blana, supra.*

it the same as any other preliminary motion. In the within case, this would mean that on remand the trial judge may impanel a jury and conduct a mini-trial culminating in a special verdict on the statute of limitations issue, or may conduct a nonjury evidentiary hearing and make findings of fact and conclusions of law upon which to base a determination.

On appeal, defendant hospital also claims that the trial court committed error requiring reversal in changing its pretrial ruling in limine by refusing to permit defendant hospital to impeach Dr. Lawson with respect to his alleged interest, bias and prejudice in favor of plaintiff, as reflected in his settlement agreement with plaintiff. Originally, plaintiff sued defendant Dr. James Lawson and defendant hospital. Dr. Lawson is a plastic surgeon who, along with doctors with other specialties, was called in by defendant hospital to treat plaintiff who had been severely injured in an automobile accident. Dr. Lawson was particularly involved with plaintiff's badly fractured lower jaw and teeth damage. Shortly before trial, plaintiff settled with Dr. Lawson for $200,000. In the written settlement agreement, in exchange for the $200,000 paid him by Dr. Lawson, plaintiff agreed to indemnify Lawson for any amount Lawson might be required to pay defendant hospital, including actual attorney fees and costs of litigation as a result of and arising out of plaintiff's claims, and plaintiff covenanted not to sue Dr. Lawson for any further damages.

Apparently, prior to trial, defendant hospital made a motion to be permitted to examine Dr. Lawson regarding the amount and details of his settlement with plaintiff. According to counsel for defendant hospital, the trial judge may have led counsel for defendant hospital to believe she would

permit him to do so. The extent or scope of the trial judge's *ruling* is in dispute and, as it was a side-bar matter, is not set forth in the record. No questions were actually put to Lawson by counsel for defendant hospital regarding his settlement with plaintiff. The only reference to this subject in the trial record is the following exchange, which occurred *after* defendant hospital rested its case:

*The Court:* Sit down. Everybody be seated. Mr. Feringa [Counsel for defendant hospital] remembered something.

*Mr. Feringa:* Your Honor, I apologize to the Court. During my cross examination of Doctor Lawson I was relying on the motion in limine which we had presented regarding the settlement, the conditions of the settlement and the fact that Mr. Palenkas now has agreed to pay for Doctor Lawson's attorneys fees as a result of the settlement and that Doctor Lawson irrespective of what this jury does would not be required to spend any more money.

The Court refused me the opportunity, the Court reversed herself [sic], and refused me the opportunity to cross examine Doctor Lawson on that.

*The Court:* Just as you relied on that, I always rely on attorneys representations when I make a ruling and it was your representation that it would be a [sic] significant import to bring that evidence out because it would be necessary to attack the credibility of Doctor Lawson. As it turned out Doctor Lawson's testimony certainly was not designed to assist the Plaintiff, at least in this Court's mind and Mr. Fieger quite properly brought that to the Court's attention.

He has testified now very candidly somewhat expressing more candor than one sees on the witness stand and I didn't think that it would be appropriate at that point. The prejudicial affect [sic] was there and the Court of Appeals has rules and I was willing to go out on a limb because I felt it would be important with regard to the interest,

bias, or prejudice the witness may have. He didn't
demonstrate any so we were able to nip it in the
bud because Mr. Fieger objected timely.

*Mr. Feringa:* Thank you, Your Honor.

Plaintiff says the understanding only applied if
plaintiff called Dr. Lawson as a witness and not
where, as here, defendant hospital called Dr. Law-
son as a witness. Since defendant hospital ne-
glected to cause a clear record of its motion and of
the judge's specific ruling to be made, we limit
consideration on appeal to those things which
seem clear. For example, it is clear that, pursuant
to his settlement agreement with Dr. Lawson,
plaintiff hired different counsel who appeared for
Lawson after the settlement and plaintiff paid his
attorney fees. Contrary to the trial judge's indica-
tion, the testimony of Dr. Lawson was very detri-
mental to defendant hospital. Lawson claimed that
defendant, William Beaumont Hospital-Troy, had
no plastic surgeons available other than himself,
the thrust of which testimony was to place the
onus on the hospital for the crucial period when,
while plaintiff was in the hospital, Lawson for four
or five days neither was available to plaintiff nor
had arranged cover by another plastic surgeon.
Without Lawson's testimony, plaintiff's case
against defendant hospital for *separate* negligence
on the part of the hospital, other than *vicarious*
negligence arising out of the agency relationship
with Dr. Lawson, would have been substantially
weaker. Also, it should be remembered that the
jury was instructed that Dr. Lawson was an agent
for defendant hospital, and that defendant hospital
was bound by and responsible for whatever Dr.
Lawson did or did not do. In short, we do not agree
with the trial judge's conclusion that Dr. Lawson's
testimony was not adverse and damaging to defen-

dant hospital. As a matter of fact, months later in ruling on defendant hospital's motion for remittitur, the trial judge cast doubt on her earlier ruling regarding Dr. Lawson's testimony when she said:

> The Court believes that this jury was inflamed and was angry. Perhaps it was because the hospital really offered no other witnesses other than the attending doctor [Lawson]. The doctor [Lawson] was not on trial, but the jury was angry.
>
> The jury, I believe in my opinion, listening to that doctor [Lawson] found him arrogant and conceited and listening to him was inflaming the jury.

However, to hold as we do that Lawson's testimony was adverse to defendant hospital does not necessarily mean that to prohibit testimony regarding Lawson's settlement with plaintiff was erroneous.

In the within case, the jury was instructed to answer special questions. This procedure and the form and content of the questions was agreed upon by all three attorneys. With respect to plaintiff's claim against defendant hospital, the jury found (1) defendant hospital was negligent, (2) that negligence was a proximate cause of injury or damage to plaintiff, and (3) the total amount of plaintiff's damages was $1,250,000. With respect to the claim of defendant hospital for indemnity from Dr. Lawson, the jury found (1) "Defendant, Dr. James Lawson, M.D." was negligent, (2) Lawson's negligence was a proximate cause of injury or damage to plaintiff, and (3) the negligence of defendant hospital was *not* "based *completely* and *solely* on its responsibility for the negligent conduct of its agent, James Lawson, J.D. [sic]."

In general, the permissible scope of examination on a collateral matter is left to the sound discretion of the trial judge and is not disturbed on

appeal unless there is an abuse of that discretion.[10] The starting point in deciding whether there is error is MRE 402, which is the bellwether of the Rules of Evidence, and MRE 408, which spells out the general rule regarding admissibility of settlement evidence, as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

In *Kueppers v Chrysler Corp,*[11] we said that where a plaintiff makes known his willingness to have the trial court adjust a verdict to give credit for amounts received in settlement, the fact of the settlement becomes immaterial and inadmissible in evidence. In the within case, plaintiff stipulated to reducing any judgment he might obtain against defendant hospital by the $200,000 he received in settlement from Dr. Lawson. Thus, this is not a case where there is a possibility of double recovery and, under the analysis of MRE 402 in *Kueppers,* the settlement details would not be admissible.[12]

---

[10] *Reno v Heineman,* 56 Mich App 509, 514; 224 NW2d 687 (1974).

[11] 108 Mich App 192, 202; 310 NW2d 327 (1981).

[12] *Kueppers, supra;* also see *Brewer v Payless Stations, Inc,* 94 Mich

The question whether there were implicit promises on the part of Lawson in his settlement with plaintiff that necessarily give rise to an indication of bias toward the hospital presents a closer, more difficult issue. Insofar as in the case between plaintiff and defendant hospital, it made no difference whether defendant hospital was guilty of *separate, independent* negligence, any bias on the part of Lawson was irrelevant. But, insofar as plaintiff agreed in the settlement agreement to indemnify Lawson for any recovery defendant hospital might make against Lawson, Lawson's bias would appear very relevant. However, in spite of that, since we have a record that does *not* show exactly what defendant hospital sought in its motion in limine, does *not* show exactly how the trial judge originally ruled and, most importantly, does *not* show the questions that defendant hospital intended to put to Lawson, we decline to find that the trial judge abused her discretion in denying defendant hospital's belated effort to examine Dr. Lawson regarding his settlement with plaintiff.

Last, we give consideration to plaintiff's cross-appeal from the trial judge's grant of remittitur. In his cross-appeal, plaintiff contends that the trial court erred in granting defendant's motion for remittitur and thereby reducing the jury verdict from $1,250,000 to $800,000. We agree. A trial court cannot substitute its judgment on damages for that of the jury unless a verdict has been secured by improper methods, prejudice or sympathy, or, alternatively, if the verdict is so clearly excessive as to shock the judicial conscience.[13] As long as the amount awarded is within the range of

App 281; 288 NW2d 352 (1979), aff'd 412 Mich 673 (1982); *Silisky v Midland-Ross Corp,* 97 Mich App 470; 296 NW2d 576 (1980).

[13] *Guzowski v Detroit Racing Ass'n, Inc,* 130 Mich App 322, 327; 343 NW2d 536 (1983); *Belin v Jax Car Wash No 5, Inc,* 95 Mich App 415, 423-424; 291 NW2d 61 (1980).

the evidence and within the limits of what reasonable minds would deem just compensation for the injury sustained, the verdict should not be disturbed.[14] A trial court's decision to grant remittitur will be reviewed for an abuse of discretion.[15]

In *Pippen v Denison Division of Abex Corp,*[16] a panel of this Court noted that trial and appellate courts are reluctant to allow verdicts in personal injury cases to be disturbed since personal injury cases involve assigning a monetary value to a plaintiff's pain and suffering which cannot be measured by an absolute standard. In the within case, the trial judge stated that she was remitting the verdict because:

> It did shock the judicial conscious [sic]. The Court believes that this jury was inflamed and was angry. Perhaps it was because the hospital really offered no other witnesses other than the attending doctor. The doctor was not on trial, but the jury was angry.
> The jury, I believe in my opinion, listening to that doctor found him arrogant and conceited and listening to him was inflaming the jury.

Our review of Dr. Lawson's testimony does indicate that he was a factor in the jury's verdict. However, we would not say that his testimony, the testimony of one witness only, so inflamed the jury as to make the verdict improper. The fact is, however, that Dr. Lawson was called as a witness by defendant hospital. Defendant hospital cannot call a witness (Dr. Lawson) under the adverse party statute (as happened here) and then com-

---

[14] *Precopio v Detroit,* 415 Mich 457, 465; 330 NW2d 802 (1982).

[15] *Argenta v Shahan,* 135 Mich App 477; 354 NW2d 796 (1984), rev'd on other grounds 424 Mich 83 (1985).

[16] 66 Mich App 664, 674-676; 239 NW2d 704 (1976), lv den 399 Mich 823 (1977).

plain that he hurt their case. No such objection to his testimony was made by defendant hospital at the time he testified. Furthermore, we do not believe the size of this verdict is so excessive as to be outside of any reasonable range of the evidence.

The medical testimony presented was largely uncontroverted and demonstrated the painful and serious nature of plaintiff's injuries and the ensuing pain from the treatment rendered. As a result of Lawson's malpractice, plaintiff suffered extreme pain, inconvenience and the frustration of undergoing three complex surgical procedures and attendant recovery periods. Following two of these surgical procedures, his jaw was wired shut for periods of six and eight weeks respectively. The record reveals that plaintiff continues to have a slight facial deformity in that the left side of his face is flattened and his chin points abnormally to the right. In addition, he has facial scars from the surgery.

Plaintiff testified that he experiences chronic pain that is worsened by the weather and that has not been alleviated by exercise. He claims difficulty in chewing hard foods and in speaking. The oral surgeon testified that plaintiff has a permanent disability in the form of joint disease in his jaw and that accompanies this condition. He will also have some disability with his hip as a result of the bone graft. Further, since one of the surgical procedures required manipulation of two nerves in the jawbone, plaintiff has a permanent numbness in the lower jaw. Aside from the dental restoration plaintiff has already gone through, there was testimony that plaintiff will have to undergo further reconstructive treatment in the future at a cost of approximately $10,000 to $20,000. In addition, plaintiff's continuing functional

disability with respect to the vertical components in his jaw may necessitate further reconstructive surgery. Aside from the physical and functional disability, the jury heard plaintiff's testimony and that of his mother and a psychologist who examined him indicating that he has experienced, and will continue to experience, severe pain and suffering as a result of the malpractice. For these reasons, we believe the jury verdict was within the range of the evidence and was not so excessive as to shock the judicial conscience. On the contrary, the damages awarded related more to plaintiff's injuries than to anger at Dr. Lawson. Consequently, we would be very reluctant to disturb this verdict merely because of its size and, therefore, regarding this issue, we reverse the order of remittitur and reinstate the jury verdict.

Affirmed in part, and reversed in part.