MOSS v PACQUING

Docket Nos. 110936, 111741. Submitted August 10, 1989, at Lansing. Decided May 7, 1990.

On April 22, 1979, Tammy Moss had an intrauterine device inserted by Dr. Artemio Pacquing. After experiencing difficulties, Moss returned to Dr. Pacquing on February 5, 1982, to have the IUD removed. Moss underwent surgery on March 2, 1982, for removal of the IUD. For the next year Moss used oral contraceptives. Thereafter, she unsuccessfully attempted to become pregnant. Fertility tests performed in March, 1985, disclosed that Moss' Fallopian tubes were infected or occluded. In August of 1985, Moss underwent surgery to remove the blockage from both Fallopian tubes. Even following surgery, Moss' attempts to become pregnant were unsuccessful. In August, 1986, Moss and her husband allegedly first realized, after reading a magazine article, that the IUD was capable of causing permanent sterility. On September 30, 1986, Tammy and Dennis Moss filed suit against Artemio Pacquing, M.D., Artemio Pacquing, M.D., P.C., and G. D. Searle & Co., manufacturer of the IUD, in Oakland Circuit Court alleging that Searle knowingly provided an unsafe and defective product, failed to warn of known risks, breached express and implied warranties, and fraudulently represented the product's safety. Plaintiffs also alleged that Dr. Pacquing committed medical malpractice by failing to warn Tammy Moss of the risks associated with the use of the IUD and that she had become sterile as a result of the wrongful acts of defendants. A loss of consortium claim was filed by Dennis Moss. Defendants moved for summary disposition on the ground that plaintiffs' claims were barred by the statute of limitations. Plaintiffs argued that determination of when they first knew or should have known of their cause of

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 321, 324, 362; Husband and Wife § 447.

Recovery for loss of consortium for injury occurring prior to marriage. 5 ALR4th 300.

When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 368.

action was a question of fact to be determined by a jury rather than by summary disposition. The court, Steven N. Andrews, J., granted summary disposition in favor of defendant Searle on July 21, 1988, and in favor of the remaining defendants on September 7, 1988. Plaintiffs filed separate appeals from the two orders granting summary disposition. The appeals have been consolidated.

The Court of Appeals *held:*

1. A dispute concerning the date when a plaintiff in a medical malpractice action discovered, or reasonably should have discovered, his cause of action is a factual determination to be made by the jury where a jury trial has been demanded. Where no factual disputes exist, the question becomes one of law appropriate for the trial court to answer. In this case, an ambiguity exists concerning what Tammy Moss knew and when she knew it. The trial court erred in granting summary disposition in favor of defendants.

2. The fact that plaintiffs were not married at the time the alleged tortious injury occurred does not necessarily defeat Dennis Moss' loss of consortium claim. A claim of loss of consortium can be brought if, at the time of marriage, neither spouse knew, or in the exercise of reasonable diligence could have known, of the claim. Thus, disposition of Dennis Moss' consortium claim will also be determined upon remand and proofs at trial.

Reversed and remanded for trial.

G. S. ALLEN, J., concurred, with the exception that he would not remand Tammy Moss' claim of products liability against G. D. Searle & Co. He would find that claim is clearly barred by the statute of limitations.

1. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — DISCOVERY OF INJURY — JURY QUESTION.

A dispute concerning the date when a plaintiff in a medical malpractice action discovered, or reasonably should have discovered, his cause of action is a factual determination to be made by the jury where a jury trial has been demanded; where no factual disputes exist, the question whether the action is barred by the statute of limitations becomes one of law appropriate for the trial court to answer.

2. TORTS — LOSS OF CONSORTIUM — ACTIONS.

A claim for loss of consortium is derivative and recovery in an action for loss of consortium is contingent upon the injured person's recovery of damages.

3. Torts — Loss of Consortium — Actions.

A plaintiff may recover for loss of consortium when he was not married to his wife at the time of her injury if, at the time of marriage, neither spouse knew, or in the exercise of reasonable diligence could have known, of the wife's claim.

*Bleakley & McKeen, P.C.* (by *Brian J. McKeen*), for plaintiffs.

*Keller & Avadenka, P.C.* (by *Barry F. Keller*), for Artemio Pacquing, M.D., and Artemio Pacquing, M.D., P.C.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Joseph R. Assenzo* and *Susan Healy Zitterman*), for G. D. Searle & Co.

Before: Murphy, P.J., and Neff and G. S. Allen,* JJ.

Murphy, P.J. In this products liability and medical malpractice action arising out of the use of the Cu-7 intrauterine device, we are asked to determine whether the trial court erred by granting summary disposition on the ground that plaintiff Tammy Moss' claims were barred by the statute of limitations. MCR 2.116(C)(7). The court, having concluded that the statute of limitations barred Tammy Moss' claim, further granted defendant summary disposition on plaintiff Dennis Moss' claim for loss of consortium for failure to state a claim. MCR 2.116(C)(8). We reverse.

On April 22, 1979, following the birth of her daughter, plaintiff Tammy Moss came to the office of her obstetrician-gynecologist, Artemio Pacquing, M.D., and explained that she had become pregnant while on oral contraceptives and wanted a more

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

reliable form of contraception. Dr. Pacquing informed plaintiff that the Copper-7 or Cu-7 IUD was effective and inserted the device that day. He also explained that she might experience cramping and heavier menstrual periods. The IUD was manufactured by defendant Searle.

Plaintiff used the IUD for over two years. She experienced longer and heavier menstrual periods, but had no other complaints.

On November 16, 1981, plaintiff returned to Dr. Pacquing complaining of severe cramping, vaginal discharge, and a high fever. Suspecting a pelvic infection, Dr. Pacquing prescribed a vaginal cream and antibiotics.

The following day plaintiff presented herself at the emergency room of St. Joseph's Hospital in Pontiac with complaints of a high fever and urinary retention. Following treatment, she was discharged with a final diagnosis of acute cystitis, an inflammation of the urinary bladder.

On February 5, 1982, plaintiff returned to Dr. Pacquing and requested removal of the IUD. Dr. Pacquing was unable to locate the IUD. On February 19, 1982, Dr. Pacquing was again unsuccessful in locating the device. Plaintiff was therefore required to undergo surgery for removal of the IUD. This surgery took place on March 2, 1982. Plaintiff was not told that she had suffered any permanent injury as a result of the IUD.

For approximately one year following removal of the IUD, Tammy Moss used oral contraceptives. She then ceased using contraceptives and attempted to become pregnant. When the couple's attempts proved unsuccessful, Tammy and Dennis Moss both underwent a series of fertility tests. Dennis Moss' sperm count was within the normal limits. However, tests performed at the Lapeer Community Hospital in March, 1985, disclosed

that Tammy Moss' two Fallopian tubes were infected or occluded.

On June 25, 1985, Tammy Moss underwent a diagnostic laparoscopy which revealed the need for major corrective surgery to remove the blockage from both Fallopian tubes. In August of 1985, a bilateral salpingostomy[1] and lysis of adhesions were performed. Following surgery, plaintiff continued her efforts to become pregnant but was still unable to do so.

Plaintiffs claim that it was not until August, 1986, when they read a magazine article, that they first realized that the IUD was capable of causing permanent sterility and that defendants Searle and Pacquing had negligently failed to warn of this danger. On September 30, 1986, plaintiffs filed their complaint for products liability and medical malpractice.

The six-count complaint alleged that Searle knowingly provided an unsafe and defective product, failed to warn of known risks, breached express and implied warranties, and fraudulently represented the product's safety. The complaint also alleged that Dr. Pacquing committed medical malpractice by failing to warn plaintiff of the risks associated with the use of the IUD and that plaintiff Tammy Moss had become sterile as a result of the wrongful acts of defendants. A loss of consortium claim was filed by Dennis Moss. The complaint specifically alleged that plaintiffs filed their complaint within six months after discovering their cause of action.

Pursuant to MCR 2.116(C)(7), defendants moved for summary disposition on the ground that plaintiffs' claims were barred by the statute of limita-

---

[1] A salpingostomy is an artificial opening made in the Fallopian tube in which the fimbriated extremity has been closed by inflammation.

tions. Plaintiffs responded to the motions, asserting that their cause of action for medical malpractice was not time-barred because the complaint was filed within six months after plaintiffs discovered the malpractice. Plaintiffs contended that the claim for products liability was filed within three years from the time that the claim accrued in compliance with MCL 600.5805(9); MSA 27A.5805(9). Plaintiffs argued that determination of when they first knew or should have known of their cause of action was a question of fact to be determined by a jury rather than by summary disposition.

In considering a motion for summary disposition under MCR 2.116(C)(7), a court must consider any affidavits, pleadings, depositions, admissions, and documentary evidence then filed or submitted by the parties. MCR 2.116(G)(5). In this case, all of plaintiffs' well-pled factual allegations are accepted as true and are to be construed most favorably to plaintiffs. *Wakefield v Hills,* 173 Mich App 215, 220; 433 NW2d 410 (1988). If a material factual question is raised by the evidence considered, summary disposition is inappropriate. *Levinson v Sklar,* 181 Mich App 693, 697; 449 NW2d 682 (1989); *Hazelton v Lustig,* 164 Mich App 164, 167; 416 NW2d 373 (1987). The trial court in this case, in addition to the pleadings, was presented with plaintiff Tammy Moss' deposition and an affidavit filed by Tammy Moss in opposition to the summary disposition motion.

Currently, a conflict exists among panels of this Court regarding whether a statute of limitations issue must be decided by a jury, *Wakefield, supra; Leyson v Krause,* 92 Mich App 759, 764-765; 285 NW2d 451 (1979), or by the judge as a preliminary question. *Blana v Spezia,* 155 Mich App 348, 354; 399 NW2d 511 (1986). If decided by a judge as a

preliminary question, there must be an evidentiary hearing and opinion with full findings of fact and conclusions of law. *Levinson, supra; Palenkas v William Beaumont Hosp,* 162 Mich App 271, 284-285; 412 NW2d 709 (1987), aff'd in part, rev'd in part, this issue not addressed, 432 Mich 527 (1989).

Even if we agreed with *Blana,* which we do not, we would reverse since the trial court failed to comply with the requirement of a full evidentiary hearing. However, we reject *Blana* and would follow the *Wakefield-Leyson* line of cases.

MCR 2.116(I)(3) provides in pertinent part:

A court may, under proper circumstances, order immediate trial to resolve any disputed issue of fact, and judgment may be entered forthwith if the proofs show that a party is entitled to judgment on the facts as determined by the court . . . . If the motion is based on subrule (C)(7) and a jury trial has been demanded, the court may order immediate trial, but must afford the parties a jury trial *as to issues raised by the motion as to which there is a right to trial by jury.* [Emphasis added.]

At the time our Supreme Court adopted this court rule, there existed a long line of cases which held that, where there is a dispute concerning the date when a plaintiff discovered, or reasonably should have discovered, his cause of action, this factual determination is to be made by a jury. *Winfrey v Farhat,* 382 Mich 380, 387; 170 NW2d 34 (1969); *Wallisch v Fosnaugh,* 126 Mich App 418, 424-425; 336 NW2d 923 (1983), lv den 418 Mich 871 (1983); *Leyson,* 92 Mich App 764-765; *Leary v Rupp,* 89 Mich App 145; 280 NW2d 466 (1979); *Kelleher v Mills,* 70 Mich App 360; 245 NW2d 749 (1976). Accordingly, we can only conclude that the issue of discovery is an issue to which a right to jury trial exists unless the facts are undisputed

and the trial court can properly conclude that the plaintiff's claim is barred as a matter of law. This interpretation is consistent with the notes following the court rule:

Subrule (I) includes the provisions regarding disposition of the motion found in GCR 1963, 116.3 and 117.3. In addition, under subrule (I)(2), an immediate trial of disputed factual issues raised by a motion under subrule (C)(7) may be held despite the fact that a jury has been demanded. *The immediate trial would, however, be by jury.* [Emphasis added.]

We disagree with the assertion in *Blana, supra,* p 354, that the language of MCR 2.116(G)(5) serves as support for the conclusion that the discovery issue is to be decided by the trial court after an evidentiary hearing. MCR 2.116(G)(5) provides in part:

The affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10).

We read this subrule as mandating no more than that the trial judge take advantage of as broad a base of evidentiary material as possible before determining whether a material factual dispute exists. We find nothing in this subrule, or in MCR 2.116(I)(3) for that matter, that expressly repudiates the time-honored precepts that where no factual disputes exist, the question becomes one of law appropriate for the trial court to answer, but that where a factual dispute does exist, the question is to be answered by a jury. *Wallisch, supra,* p 424.

The issue thus becomes whether or not there is a disputed fact question regarding the statute of limitations which should be submitted to the jury. We have carefully reviewed the record, including the pleadings, plaintiff's deposition, and plaintiff's affidavit, and conclude that an ambiguity exists concerning what plaintiff knew and when she knew it. Therefore, because a fact question was presented for the jury to resolve, the trial court erred by granting defendants summary disposition.

Although no one expressly told her of a connection, there is evidence to support a finding that plaintiff knew that the infection she suffered in late 1981 was probably related to the IUD. However, it is unclear exactly when she made this connection and whether she knew that the infection was caused by a defective product. Similarly, in late 1982 or early 1983, from reading various magazines, she may have known that IUDs in general carried a slight risk of causing infertility in some women. However, the record does not reflect that she knew or should have known that the Cu-7 intrauterine device with which she was provided caused infertility or that she, in fact, was at risk.

In her deposition, plaintiff stated that she was not concerned about the effect of the infection on her ability to have children and that Dr. Pacquing never mentioned that it might affect her ability to bear children. Furthermore, according to plaintiff's affidavit, it was not until 1986, shortly before filing suit, that she became aware that defendant doctor was negligent or that she had a cause of action against him, that defendant doctor was supposed to warn her of the possibility of sterility and associated risks before inserting the IUD, that she suffers sterility as a result of using the Cu-7 IUD,

or that the IUD was a defective product for which she might have a claim against defendant Searle.[2]

Under these circumstances, we hold that the question of when plaintiff Tammy Moss discovered or should have discovered the medical malpractice claim and the products liability claim should have been submitted to the jury for determination. See *Wakefield, supra,* pp 220-221; *Bonney v Upjohn Co,* 129 Mich App 18, 35; 342 NW2d 551 (1983).

Plaintiff Dennis Moss' claim for loss of consortium is clearly derivative of his injured spouse's claim. His recovery for loss of consortium stands or falls upon her recovery of damages. *Furby v Raymark Industries, Inc,* 154 Mich App 339, 343; 397 NW2d 303 (1986). However, defendants argue that even if plaintiff Tammy Moss' claim is not time-barred, her husband's claim must be dismissed because the parties were not married at the time the alleged tortious injury occurred. According to defendants, one should not be entitled to marry a cause of action.

This issue was raised and rejected in *Furby, supra.* In that case, a panel of this Court adopted the "discovery rule" and concluded that a claim of loss of consortium could still be brought if, at the time of marriage, neither spouse knew, or in the exercise of reasonable diligence could have known, of the claim. *Id.,* p 347. Application of *Furby* to our holding in the instant case means that the disposition of the consortium claim will also be determined upon remand and proofs at trial.

[2] We find this case distinguishable from *Caldwell v A H Robins Co,* 577 F Supp 796 (WD Pa, 1984), cited by our dissenting colleague. In *Caldwell,* the trial court found that the plaintiff's claim was barred by the statute of limitations because the plaintiff considered litigation arising out of her use of an IUD as early as June, 1981. Unlike the situation in this case, the plaintiff in *Caldwell* was clearly aware of a causal connection between the IUD and her injury more than two years before her complaint was filed in August, 1983. *Id.,* pp 797-798.

In summary, the decision of the trial court dismissing plaintiffs' action against defendant Searle and defendant Pacquing is reversed and the matter remanded for trial. We do not retain jurisdiction.

NEFF, J., concurred.

G. S. ALLEN, J. *(concurring in part and dissenting in part).* I agree with the majority that a disputed question of fact exists as to when Tammy Moss discovered or should have discovered a connection between her infertility and the IUD. I also agree that Dennis Moss' consortium claim is derivative and is not barred because Tammy and Dennis were unmarried when the alleged tortious injury occurred. Therefore, those two claims should be remanded for trial.

But I cannot agree that Tammy Moss' claim of products liability against G. D. Searle & Co. should be remanded for trial. In my opinion the record at trial clearly discloses that as early as November or December, 1981, Tammy Moss knew or should have known of the connection between the Cu-7 intrauterine device and the problems for which she was given emergency treatment in November, 1981. Attached to defendant Searle's motion for summary disposition was an eighty-page transcript of the deposition of Tammy Moss which discloses plaintiff knew something was wrong with the IUD and wanted the IUD removed.

> *Q.* [*Defense Counsel:*] Do you remember learning from whatever source, back in November or December of 1981, when you were having all these problems, that your infection was probably related to your IUD?
> *A.* [*Tammy Moss:*] I don't think anyone told me that.

*Q.* Even though nobody specifically told you that, did you make that connection in your own mind?

*A.* Yes, I did.

\* \* \*

*Q.* At some point in time, did you begin to experience some other complaints or problems that you, at least in your own mind, connected with the IUD?

*A.* Yes.

*Q.* What were those?

*A.* It was in November of '81, I had severe pain and high fever.

\* \* \*

*Q.* At that time, you knew that infections were one of the risks of IUDS, correct?

*A.* I'm not sure, I may have.

*Q.* Were you shocked to learn you had an infection of your reproductive organs and that the IUD might have been connected.

*A.* Yes, I was.

*Q.* Do you think there might have been something wrong with the IUD to cause you to have infections of your reproductive organs?

*A.* Well, I learned there was something wrong with it.

Clearly, as early as late 1981 plaintiff was aware of both an injury (severe infection of her reproductive organs) and its connection with an alleged defective product (the IUD). Therefore, as early as late 1981 plaintiff either did discover, or should have discovered, the existence of her cause of action against Searle. Because suit against Searle was not commenced until September 30, 1986, plaintiff's action against Searle is barred by the three-year period of limitations following discovery.

The majority admit that although "there is evidence to support a finding that plaintiff knew that

the infection she suffered in late 1981 was probably related to the IUD," the record is unclear as to "exactly" when she made that connection and whether she knew that the product was defective. I submit that, on the basis of her deposition testimony, plaintiff was well aware "something was wrong" with the IUD. While she may not have known the "exact" date, she knew it was sometime in late 1981 or early 1982.

The majority further argues that although plaintiff associated her pelvic infection to the IUD in late 1981, because plaintiff was unaware of her infertility until a much later date, the period of limitations did not begin to run until plaintiff knew of the infertility and its connection to the IUD. I agree that plaintiff did not become aware of her inability to conceive until sometime in 1985 or 1986. Obviously, she could not learn of this until after she had tried to have a child. Because, I find plaintiff's deposition testimony on that question somewhat ambiguous and at places even conflicting, I agree plaintiff's malpractice claim should be submitted to the jury.

But I cannot agree that because plaintiff was unaware of her infertility until a date yet to be determined by the jury, the statute of limitations did not commence to run on plaintiff's claim of product liability against defendant Searle. One does not have to know the full extent of one's injuries before the period of limitations begins to run. *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146, 151; 200 NW2d 70 (1972). More damage may manifest itself later, but no new period of limitations arises. *Grimm v Ford Motor Co,* 157 Mich App 633, 638; 403 NW2d 482 (1986), lv den 428 Mich 902 (1987).

No Michigan case factually similar to the instant case is found. However, in Pennsylvania,

whose applicable statute of limitations, like Michigan's, begins to run when a complainant knows or should have reason to know of an alleged defect, a strikingly similar case is found.

In *Caldwell v A H Robins Co,* 577 F Supp 796 (WD Pa, 1984), cert den 469 US 862; 105 S Ct 197; 83 L Ed 2d 129 (1984), reh den 469 US 1029; 105 S Ct 450; 83 L Ed 2d 375 (1984), the plaintiff had a Dalkon Shield inserted by her physician in December, 1972. In December, 1977, she was hospitalized with severe pelvic inflammatory disease. Her physician diagnosed the infection as related to the presence of the Dalkon Shield and removed the device. The plaintiff was discharged from the hospital on January 7, 1978. In 1982 she suffered from early menopause and emotional distress and underwent a hysterectomy. On July 13, 1983, she filed suit in propria persona against the defendant manufacturer of the Dalkon Shield. The defendant's motion to dismiss on the ground that suit was barred by the two-year period of limitations was granted by the court. *Id.* at 797-798.

The plaintiff argued that while she may have been aware of a connection between her 1977 pelvic infection and the Dalkon Shield, the subsequent onset of early menopause and her hysterectomy within the two-year period of limitations barred the statute of limitations from running. The court rejected this argument, stating:

> However, the plaintiff is not entitled to a new limitations period to begin with the appearance of each new injury or complication. *Shadle v Pearce,* 287 Pa Super 436; 430 A2d 683 (1981); *Staiano v Johns Manville Corp,* 304 Pa Super 280; 450 A2d 681 (1983). The limitations period begins to run when damage is inflicted which is "physically objective and ascertainable." *Ragan v Steen,* 229 Pa Super 515, 520; 331 A2d 724 (1974).

Although the limitations period is tolled until an injury is discoverable, once that occurs and a cause of action becomes a reality the injured party may not then sleep on that cause of action until further injuries appear. As the Court made clear in *Shadle,* an injured party "may not unduly postpone an action until the full extent of his damage is ascertained." 287 Pa Super at 441; 430 A2d 683. Plaintiff here had sustained an injury in 1977, had known of the injury and its causal relationship to the Dalkon Shield at least by June 1981, and had failed to bring a timely suit on this cause of action. Her later discovered injuries do not invoke either a new cause of action or a new limitations period. We conclude therefore that plaintiff's claims for compensatory damages are barred as not timely filed. [*Caldwell,* 577 F Supp 797-798.]

In my opinion there is no genuine issue of fact as to whether Tammy Moss knew as of late 1981 that the ɪᴜᴅ was defective and knew that it was connected with the infection in her reproductive organs. The fact that she subsequently "discovered" other injuries to her reproductive organs does not preclude the period of limitations from running on her claim against Searle.[1]

---

[1] The *Caldwell* court, at 798, n 1, noted that a different result might be reached for a separate and distinct injury but then went on to say that the plaintiff's earlier and later injuries "are sufficiently similar, all arising with plaintiff's reproduction organs."