STINNETT v TOOL CHEMICAL COMPANY, INC

Docket Nos. 86586, 86587. Submitted November 19, 1986, at Detroit. Decided May 6, 1987.

Clarence Stinnett and his wife, Donna Stinnett, brought an action in the Wayne Circuit Court against Tool Chemical Company, Inc., and others on August 31, 1983, alleging that Clarence Stinnett suffered lung damage during his employment, from February, 1977, to July 31, 1980, as a result of exposure to chemicals manufactured by defendants. While the depositions indicate that plaintiffs were told by a doctor that the problem might have been caused by chemical exposure on the job, the condition was not accurately diagnosed until November, 1980. Tool Chemical Company moved for summary disposition based on the statute of limitations. The other defendants joined in the motion. The court, Marianne Battani, J., denied the motions. Tool Chemical Company appealed by leave granted. The other defendants appealed by leave granted. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held*:

A cause of action in a products liability case for a latent occupational disease accrues at the time a person knows or should have known of the injury and not at the time of exposure to the product or at the time of diagnosable injury and an action on that cause should be brought within three years of that time. Under the facts, the period of limitations on plaintiffs' cause of action had run.

Reversed.

REFERENCES

Am Jur 2d, Limitation of Actions §§ 107, 136, 137.

Am Jur 2d, Products Liability §§ 909 *et seq.*

When statute of limitations begins to run as to cause of action for development of latent industrial or occupational disease. 1 ALR4th 117.

Statute of limitations: running of statute of limitations on products liability claim against manufacturer as affected by plaintiff's lack of knowledge of defect allegedly causing personal injury or disease. 91 ALR3d 991.

When limitation period begins to run against cause of action or claim for contracting of disease. 11 ALR2d 277.

LIMITATION OF ACTIONS — PRODUCTS LIABILITY.

> A cause of action in a products liability case for a latent occupational disease accrues at the time a person knows or should have known of the injury and not at the time of exposure to the product or at the time of diagnosable injury and an action on that cause should be brought within three years of that time (MCL 600.5805[1],[9], 600.5827; MSA 27A.5805[1],[9], 27A.5827).

*Meklir, Schreier, Nolish & Friedman, P.C.* (by *Samuel A. Meklir* and *Steven A. Kohler*), for plaintiffs.

*Feikens, Foster, Vander Male & DeNardis, P.C.* (by *Ronald F. DeNardis* and *Robert J. Gullo*), for defendant General Latex & Chemical Company.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Gary L. Stec*), for defendant Pennwalt Corporation and Ren Plastics.

*Clark, Klein & Beaumont* (by *Charles D. Bavul*), for defendant Dow Corning Corporation.

*Honigman, Miller, Schwartz & Cohn* (by *Mark R. Werder*), for defendant Garzel Industries.

*Stewart, Lascoe, Nowak & Flinn, P.C.* (by *Eric G. Flinn*), for defendant United Resins, Inc.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Marcia C. Jobe*), for defendant Dow Chemical Company.

*Conklin, Loesch & Caravas* (by *Michael C. Olson*), for defendant Tool Chemical Company, Inc.

Before: J. H. GILLIS, P.J., and MACKENZIE and R. ROBINSON,* JJ.

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. This is a consolidated appeal of a products liability action filed in the Wayne Circuit Court against the manufacturers of all the different products Clarence Stinnett, hereinafter plaintiff, claims to have been exposed to during his employment at Ford Motor Company (his wife's claim is one for loss of consortium). In a motion brought by defendant Tool Chemical Company, and joined in by the other defendants, summary disposition was requested based upon the statute of limitations. MCR 2.116(C)(7). The trial judge denied the motion. Defendant Tool, in Docket No. 86587, and the remaining defendants, in Docket No. 86586, then filed applications for leave to appeal, which were granted. At the same time, this Court consolidated the appeals.

In his complaint, filed on August 31, 1983, plaintiff alleges to have suffered lung damage during his employment with Ford due to exposure to plastics and other chemicals manufactured by defendants. Plaintiff was hired by Ford as a plastics specialist at Ford's design center in February, 1977. Plaintiff's last day of employment with Ford was July 31, 1980.

While at Ford, plaintiff, who said he did not have any previous breathing problems, went to his family doctor, Dr. Conrad Pearl, D.O., on March 7, 1980, complaining of "slight stomach problems, coughing, wheezing, and shortness of breath." While plaintiff thought he had the flu, Dr. Pearl made a nonspecific finding of sinusitus/bronchitis in a report dated March 13, 1980, with an expected recovery in seven to ten days. This report specifically indicated this condition was not related to plaintiff's employment. On March 25, 1980, Dr. Pearl noted that plaintiff's condition had improved and he could return to work.

While initially feeling some relief, plaintiff testi-

fied that his breathing problems continued to worsen until they caused him to terminate his employment with Ford on July 31, 1980. Plaintiff returned to Dr. Pearl on August 1 and 5, 1980. At this time chest x-rays were taken and they showed moderate infiltrates, compatible with bilateral interstitial pneumonitis.

While plaintiff said that Dr. Pearl could not diagnose his condition and did not tell plaintiff he was suffering from any type of lung disease, plaintiff testified at his deposition:

> *Q.* Going back to the time of late July, at any time before you quit Ford Motor Company, did Dr. Pearl express to you the opinion that your lung problems were caused by chemicals on the job?
>
> *A.* Dr. Pearl asked me what type—in August he asked me what type of work I did, what type of materials that I worked with.
>
> *Q.* Would this be the period that you visited Dr. Pearl around August 4th or 5th, 1980?
>
> *A.* Yes, sir.
>
> *Q.* Did he express to you the opinion at that time that your lung problems were caused by chemicals on the job?
>
> *A.* He thought they may be.

In the records of Dr. Pearl, there is an entry, dated August 19, 1980, reflecting chronic lung congestion, and that it is "probably job related."

After plaintiff's second visit to Dr. Pearl in August, plaintiff was referred to a specialist, Dr. Hecker, whom plaintiff saw in the middle of August, 1980. As to this visit, plaintiff testified:

> *Q.* Did there come a time when he referred you to a specialist for lungs?
>
> *A.* Yes, sir.
>
> *Q.* Who is this individual, sir?

*A.* I don't remember his name. I only saw him once or twice.

*Q.* Would that also be in early August, 1980?

*A.* Yes, sir, or mid-August, somewhere to that.

*Q.* This individual expressed to you the opinion that your lung problems were caused by chemical [sic] on the job?

*A.* He thought they may.

Plaintiff also testified as to when he first thought his lung problems might be caused by the exposure to chemicals on his job, saying:

*Q.* When you did first become — come to the belief that your lung problems were caused by chemical exposures on the job?

(Mr. Citrin) Irrelevant.

*A.* When they started to mention the fact of the materials that I worked with.

*Q.* This would be your earliest conversation with Dr. Pearl on August 4th or 5th, 1980?

*A.* As to—

*Q.* As to when you came to the belief that the chemicals might be causing your lung problems?

*A.* Yes, sir.

After still not obtaining any relief for his breathing difficulties, plaintiff began treatment with a pulmonary specialist, Dr. Joseph Lynch, in early November, 1980. After treatment with Dr. Lynch, plaintiff's condition was specifically diagnosed as alveolar proteinosis and plaintiff received proper treatment.

As noted above, plaintiff filed his complaint on August 31, 1983. Defendants moved for summary disposition, claiming that the statute of limitations had run. MCL 600.5805(1),(9) and 600.5827; MSA 27A.5805(1),(9) and 27A.5827. MCR 2.116(C)(7). The trial court denied defendants' motion stating:

I don't know that the diagnosis has to be correct. I'm not saying that. But what I am saying is he has to be informed by a physician that there is a diagnosis of a work-related injury and not something speculative. It's like going to the doctor saying it may be work related or probably work related, but I don't know, we'll have to check it out.

The court also applied the so-called discovery rule in determining when the statute of limitations began to run.

The first issue in this case is when the statute of limitations begins to run as to a product liability claim when the plaintiff develops a latent disease. Some panels of this Court have held that in such cases a plaintiff's claim accrues and the statute of limitations begins to run when the plaintiff discovers or should have discovered the claim. *Furby v Raymark Industries, Inc,* 154 Mich App 339; 397 NW2d 303 (1986); *Cullender v BASF Wyandotte Corp,* 146 Mich App 423; 381 NW2d 737 (1985); *Bonney v The Upjohn Co,* 129 Mich App 18; 342 NW2d 551 (1983), lv den 419 Mich 868 (1984). Another panel of this Court held that a plaintiff's cause of action accrues when the alleged wrongful act occurred, regardless of when plaintiff's disease was discovered. *Larson v Johns-Manville Sales Corp,* 140 Mich App 254; 365 NW2d 194 (1985), aff'd in part and rev'd in part 427 Mich 301; 399 NW2d 1 (1986). In *Larson, supra,* the Michigan Supreme Court reversed this Court and held:

[T]he cause of action for asbestosis accrues in accordance with the "discovery rule," i.e., from the time the claimant knows or should have known of the injury, rather than at the time of the exposure to asbestos or at the time of diagnosable injury. [*Larson, supra,* pp 304-305. Emphasis supplied.]

In so ruling, the Court noted that the policies behind the statute of limitations (i.e., encouraging plaintiffs to pursue claims diligently and protecting defendants from stale or fraudulent claims) were better served under a discovery rule to determine accrual dates "in these product liability cases." *Id.,* p 310. Although some may argue that the discovery rule applied by the Court should be limited to asbestos cases, we believe that the rationale applied by the Court extends to latent occupational diseases in products liability cases such as the one involved here. Accordingly, we would affirm the trial court's decision to apply the discovery rule to plaintiff's cause of action.

Nonetheless, we would reverse the trial court's decision because we believe that, given plaintiff's own unequivocal deposition testimony, plaintiff knew that he had a lung problem and he believed that the problem was caused by the chemicals he had been exposed to at work. *Larson, supra,* pp 304-305; *Blana v Spezia,* 155 Mich App 348; 399 NW2d 511 (1986). Compare *Furby, supra.*

Reversed.