**Leroy KULLMAN; Nancy Kullman, Plaintiffs–Appellants,**

v.

**OWENS–CORNING FIBERGLAS CORPORATION; Owens–Illinois, Inc.; Pittsburgh Corning Corporation, Defendants–Appellees.**

No. 90–1726.

United States Court of Appeals, Sixth Circuit.

Argued May 10, 1991.

Decided Aug. 30, 1991.

Rehearing and Rehearing En Banc Denied Oct. 17, 1991.

William L. Martens (briefed), Nancy Caine Harbour (argued), Miller, Cohen, Martens & Ice, Southfield, Mich., for plaintiffs-appellants.

Susan Healy Zitterman (argued and briefed), Kitch, Saurbier, Drutchas, Wagner & Kenney, Ronald E. Westen, Xhafer Orhan, Butzel, Long, Gust, Klein & Van Zile, Thomas G. Parachini, W. Mack Faison (argued and briefed), James D. Robb, Miller, Canfield, Paddock & Stone, James J. Hayes, Jr., Mark C. Smiley, Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, Mich., Clayton F. Farrell, Collins, Einhorn & Farrell, Southfield, Mich., for defendants-appellees.

Before KRUPANSKY and MILBURN, Circuit Judges, and BERTELSMAN, District Judge.[*]

* Hon. William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

BERTELSMAN, District Judge.

In this appeal, we must apply the law of Michigan concerning the discovery rule for applying the statute of limitations in products liability actions. Plaintiff, who suffers from asbestosis, sued a number of manufacturers of products to which he was exposed at work. The trial court granted summary judgment to the defendants on statute of limitations grounds. Finding the law of Michigan to be quite strict on this issue, we affirm.

The basic facts were succinctly stated by Judge Feikens, the trial judge, as follows:

"A hearing was held in this matter on May 10, 1990. The parties have had two opportunities to brief the issues. The facts are construed in light most favorable to the non-moving party.

"LeRoy Kullman ('Kullman') was exposed to Owens–Illinois' 'Kaylo' and Eagle–Picher's 'Super 66' cements (both asbestos-containing thermal insulation products), as well as other manufacturers' asbestos products, while employed as an operator and powerhouse maintenance man at Dow Corning in Midland, Michigan between 1955 and 1985. Kullman smoked cigarettes regularly until 1976.

"Before 1981, Kullman had three to four bouts with pneumonia, for which he was treated by Dr. Weitzel.

"In 1981, Dow Corning's plant physician, Dr. Gamon, referred Kullman to a pulmonary specialist, Dr. Thomas Damuth. In the referral letter, he documented various industrial pollutants to which Kullman was exposed during his previous 27 years at work. Though he did not list asbestos by name, he did list 'mineral dust.' He also mentioned smoking.

"Dr. Damuth began to see Kullman in December 1981. Dr. Damuth diagnosed 'pulmonary fibrosis' of 'unknown etiology.' Dr. Damuth discussed performing a biopsy on Kullman to reveal the etiology, but Kullman refused, since his condition had stabilized. In February 1982, Dr. Damuth suggested to Kullman that his fibrosis was caused by pneumonia and exposure to dust. Damuth deposition, pp. 5–6. Kullman believed this. Dr. Damuth further recommended that Kullman avoid dusty environments. Kullman complied. *Id.* At this time, Kullman realized that some of the dust that he was breathing in on the job was asbestos dust. *Id.* at 163–64.

"None of Kullman's physicians ever discussed asbestos with him. In October 1987, at a union asbestos screening, Kullman was told for the first time that he might have asbestosis. Dr. Harbut confirmed this diagnosis in July 1988.

"Nevertheless, Kullman's deposition shows that he 'suspected' in the 1970's that there was asbestos in the powerhouse where he worked, Kullman deposition, p. 84, but cannot say for sure whether he suspected in the 1970's that the dust could have been from asbestos, *id.* pp. 160–61. But he also says he knew in the 1970's that asbestos gave off dust, and that he was breathing that dust. *Id.*, p. 85. He says he was specifically aware in 1983–84 of the danger from asbestos, *id.*, p. 87, despite the fact that he was not told that he has asbestosis until 1987."

Michigan applies the discovery rule in resolving products liability statute of limitations issues. *Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 399 N.W.2d 1 (1987). In *Stinnett v. Tool Chemical Company, Inc.*, 161 Mich.App. 467, 411 N.W.2d 740 (1987), the court, applying *Larson, supra,* held an action barred because the statute of limitations had begun to run when "plaintiff knew that he had a lung problem and he believed that the problem was caused by the chemicals he had been exposed to at work." 411 N.W.2d at 743. The opinion made clear that the court was holding that the statute had run as to the manufacturers of all chemicals the plaintiff had been exposed to at work.

Factually, the decision in this case turns on the plaintiff's deposition. We have carefully read the 169–page transcript. Although for most of the deposition the plaintiff evaded the cross-examiner's efforts to pin down the date he knew he had been

exposed to harmful asbestos dust, the following testimony finally ensued:

"Q. Well, you probably told them that you were having problems breathing back then, is that right?

"A. Yes.

"Q. Did you believe at that time in 1984 that your shortness of breath was related to your pulmonary fibrosis?

"A. Yes.

"Q. They told you that at the time, didn't they?

"A. Yes.

"Q. Remember when we were earlier talking about—when I asked you to think back to the 1970's when you were in the powerhouses, and you stated that you knew that there was asbestos there? You also knew that you were breathing in the asbestos dust from that asbestos in the 1970's, didn't you?

"A. Dust is dust.

"Q. And you also knew there was asbestos there as well, right?

"A. Yes.

"Q. So you came to the suspicion in the 1970's that that dust could have been from asbestos, didn't you?

"A. Dust.

"Q. You can't say for sure one way or the other?

"A. No.

"Q. Now, I think you also testified that you were aware sometime in 1983 or in 1984 that Dow was shutting down Boilers No. 4 and 5, right?

"A. They were down because we was on the chip burner.

\*     \*     \*     \*     \*     \*

"Q. You said at that time that they blocked off Boilers No. 4 and 5 so that nobody—

"A. Yes.

"Q. That's correct, right?

"A. Yes.

"Q. So that nobody could have access to that area around the boilers, right?

"A. Yes.

"Q. They blocked it off with a rope and some plastic sheeting?

"A. All I can say is there was plastic sheeting hanging down, because No. 6 boiler was still in operation in there. That sheeting was between—or that white material, what do you call it?

"Q. The sheeting was probably there because they didn't want the pollution coming from those boilers to pollute the rest of the air in the rest of the place, right?

"A. They didn't want us in there. We wasn't supposed to be in there. We wasn't supposed to be in there, so we quit going through there.

"Q. But if for some reason you might accidentally be in there, at least you wouldn't be close to the boiler area because it was 'plasticed' off?

"A. I guess it was. It was plastic off when I went through there and they told me not to do it no more.

**"Q. You were suspicious at that time, weren't you, that being around these boilers and breathing the air around the boilers may cause a lung related disease?**

**"A. I surmised that, I was thinking, yes.**

"Q. This is sometime in '83 or '84, correct?

"A. Yes.

"Q. You also realized in 1984 that you were having a shortness of breath that was abnormal, right?

"A. Dr. Damuth told me that I had lost a little bit more.

"Q. Dr. Damuth had told you that your lung fibrosis was likely related to your dust exposure at the job, right?

"A. He didn't really say yes or no.

"Q. But he discussed options with you for further diagnosis of your inhalation of dust disease in 1982, didn't he?

"A. Repeat.

"Q. Going back to 1982 when Dr. Damuth met with you because this was right after the time that you had the poor result on your breathing test, right?

"A. Yes.

"Q. This is the time that you said you were very concerned because the nurse

had sent you in for further investigation, right?

"A. Yes.

"Q. When you asked Dr. Damuth what was wrong with you, he told you at that time that you had lung fibrosis, didn't he?

"A. Yes.

"Q. He also told you at that time that that lung fibrosis was related to your work exposure to dust, didn't he? Because that is why he said it was good that you moved on to a different classification? Is that fair?

"A. Pneumonia and I guess dust, yes. He kept more on pneumonia, scarring.

"Q. You had realized at that time that some of the dust that you may have been breathing in was asbestos dust, right?

"A. Yes.

"Q. You talked about following up perhaps by sending a sample of something from your lung tissue on for analysis, right?

"A. We discussed it, but neither one of us thought it would be proper, because it was arrested. It was something that we could in fact—if it started growing again, he didn't know how to get it arrested again."

Kullman deposition, pp. 160–164 (emphasis added).

It may be readily seen that this testimony brings the plaintiff directly within the ambit of *Stinnett, supra.*

Plaintiff argues that the statute should not be held to run until he had received a definitive diagnosis. This argument was expressly rejected in *Stinnett.* Plaintiff also argues that, before making the above-quoted admissions in his deposition, he had denied realization of any work or asbestos relation to his problems a sufficient number of times to create a jury issue. Having carefully read the entire deposition, however, we believe that it can bear only one construction as a matter of law.

Plaintiff knew or should have known more than three years before filing that he was suffering lung problems caused by exposure to dust at work and that some of this dust was asbestos. Under *Stinnett, supra,* this was enough to start the statute running.[1] Since we are bound by *Stinnett,* the decision below must be, and is, AFFIRMED.

---

1. We wish to note that we are applying the law of Michigan here. The law of other states or federal common law might yield a different result. *Cf. Hicks v. Hines, Inc.,* 826 F.2d 1543 (6th Cir.1987); *Clutter v. Johns–Manville Sales Corp.,* 646 F.2d 1151 (6th Cir.1981).