## MOLL v ABBOTT LABORATORIES

Docket Nos. 115542, 115550. Submitted February 20, 1991, at Detroit. Decided February 3, 1992, at 9:25 A.M. Leave to appeal sought.

Jean Moll and her husband, Michael Moll, brought a products liability action in the Wayne Circuit Court against Abbott Laboratories and several other manufacturers or distributors of the drug diethylstilbestrol (DES), alleging that Jean Moll's exposure to DES while in utero caused her to have a cervical condition that renders her unable to carry a fetus to term and has resulted in Michael Moll's loss of consortium. The defendants moved for summary disposition, claiming that the action was barred under MCL 600.5805(9); MSA 27A.5805(9), which provides a three-year period of limitation for products liability actions. The court, James E. Mies, J., denied the motion, and the defendants appealed by leave granted.

The Court of Appeals *held:*

A cause of action for products liability accrues when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered an injury and a likely cause of the injury, regardless of whether the plaintiff is able to prove each element of the claim.

In this case, there remains a question of fact whether the action was brought within three years of when Jean Moll knew or, through the exercise of reasonable diligence, should have known of her injury and its likely cause. The trial court therefore did not err in denying the defendants' motion for summary disposition.

Affirmed.

LIMITATION OF ACTIONS — PRODUCTS LIABILITY — DISCOVERY RULE — DRUGS.

A cause of action for products liability against a drug manufacturer or distributor accrues when the plaintiff discovers or,

REFERENCES

Am Jur 2d, Limitation of Actions § 107; Products Liability § 919.

Products liability: diethystilbestrol (DES). 2 ALR4th 1091.

Statute of limitations: when cause of action arises on action against manufacturer or seller of product causing injury. 4 ALR3d 821.

through the exercise of reasonable diligence, should have discovered an injury and a likely cause of the injury, regardless of whether the plaintiff is able to prove each element of the claim (MCL 600.5805[9]; MSA 27A.5805[9]).

*Barr & Arsenault* (by *Charles J. Barr* and *Bodo Schimers*), for the plaintiffs.

*Schureman, Frakes, Glass & Wulfmeier* (by *Cheryl Chandler*), for Abbott Laboratories.

*Plunkett & Cooney, P.C.* (by *B.I. Stanczyk, Robert G. Kamenec,* and *William J. Lynch*) (*Dickson, Carlson & Campillo* by *William A. Hanssen, Robert M. Dato,* and *Nancy Lucas Haniotis,* of Counsel), for E.R. Squibb & Sons, Inc.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Richard A. Glaser, Kathleen A. Lang,* and *Mary Beth Kelly*) and *Shook, Hardy & Bacon* (by *Laurel J. Harbour* and *Michelle Mangrum*), for Eli Lilly and Company.

*Reynold, Beeby & Magnuson* (by *Ronald C. Paul*), for Carroll Chemical Company.

*Martin, Bacon & Martin* (by *James N. Martin*), for Cooper Laboratories, Inc.

*Barbier & Tolleson, P.C.* (by *Peggy King Scully*), for Halsey Drug.

*Johnson, Shefferly, McCarroll & Moesta* (by *Reginald S. Johnson*), for Central Pharmaceuticals.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Susan Artinian* and *Bonnie Mayfield*), for Baxter Healthcare Corp.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy,*

*Moore, Sills & Poling* (by *Edmund M. Brady, Jr.*), for Blueline Chemical Co. and William H. Rorer Co.

*Butzel, Long, Gust, Klein & Van Zile* (by *Xhafer Orhan* and *Lynn M. Sheehy*), for Chromally Pharmaceutical.

*Parmenter, Forsythe, Rude, Van Epps, Briggs & Fauri* (by *Eric J. Fauri*), for Aïtana, Inc.

*Estes & Schweickert* (by *John C. Schweickert*), for Consolidated Midland Corporation.

*Nystrom, Nystrom & Hitchcock* (by *Steven J. Hitchcock*), for Burroughs-Wellcome Corporation.

*Buesser, Buesser, Blank, Fryhoff & Graham* (by *William O. Lynch*), for Haack Laboratories.

Before: REILLY, P.J., and SHEPHERD and MARILYN KELLY, JJ.

REILLY, P.J. Defendants Eli Lilly & Company, E.R. Squibb & Sons, Inc., and others separately appeal by leave granted from a circuit court order denying their motion for summary disposition pursuant to MCR 2.116(C)(7). Their appeals have been consolidated, and we affirm.

In this pharmaceutical products liability action, plaintiff Jean Moll alleges that as a result of her in utero exposure to the prescription drug diethylstilbestrol (DES) she suffers from an incompetent cervix, resulting in a probable inability to carry a fetus to term. Michael Moll alleges a loss of consortium. Defendants are manufacturers and distributors of DES.

Plaintiff testified at deposition that in 1975 she consulted a gynecologist, Dr. Ulmer, regarding

birth control. Because of the way her cervix appeared, she was asked if she had undergone any abortions. Plaintiff told the doctor that she had not, and there was no further discussion at that time about the condition of her cervix. In 1976, Dr. O'Campo told plaintiff that she had a "hood over her cervix." Dr. O'Campo asked plaintiff if her mother had taken DES and requested the medical records from when plaintiff's mother was pregnant. Plaintiff had been told by her mother, Shirley Petroff, that she was hospitalized during her pregnancy because she was "losing" plaintiff. Mrs. Petroff told plaintiff that she remembered receiving medication to prevent her from "losing" plaintiff, but did not know what she was given.

In 1977, plaintiff was told by her doctor that the cervix "didn't look good" and that the condition might be attributable to DES that her mother had taken. The doctor was still trying to locate the mother's medical records at that time. When plaintiff was having difficulty getting pregnant in 1979, her doctor indicated that her difficulty might be related to the hood over her cervix. The doctor stated that it was possible that plaintiff's condition was caused by exposure to DES.

The medical records from the pregnancy were still unavailable in 1979. Apparently, plaintiff's mother had contacted the physician who had treated her during her pregnancy, but was unable to locate the records. In her deposition, plaintiff stated that in the late 1970s she tried to call the hospital where she was born in order to obtain the records, but was told that the hospital had either burned down or closed. Plaintiff also remembered discussing articles relating to DES and DES-related injuries with her mother. The record does not disclose the content of these articles or the information plaintiff gained from discussing them. Ac-

cording to plaintiff, these discussions could have occurred as far back as 1978 or 1980.

On December 30, 1986, plaintiff and her husband filed a complaint that sought damages for injuries arising from in utero exposure to DES.[1] In June 1988, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(10), alleging that there was no genuine issue of material fact because plaintiff had failed to produce evidence that her mother had ingested DES. The motion was apparently granted, but the entry of the order was delayed so that plaintiff could complete her investigation regarding her mother's hospital records. In October 1988, plaintiff located records that indicated that her mother had ingested DES.

In December 1988, defendants again moved for summary disposition, this time under MCR 2.116(C)(7). Defendants alleged that plaintiff's complaint was filed more than three years after she learned that her injuries might be related to in utero exposure to DES and was therefore barred under MCL 600.5805(9); MSA 27A.5805(9). In her response, plaintiff argued that her cause of action had not accrued until 1988, when she located the medical records that established that her mother had ingested DES. The trial court denied defendants' motion, noting that plaintiff's cause of action did not exist more than three years before the filing of the complaint because plaintiff did not have evidence that her mother had ingested DES.

In considering a motion for summary disposition pursuant to MCR 2.116(C)(7), a court must consider any affidavits, pleadings, depositions, admissions, and documentary evidence submitted by the

---

[1] In the original complaint, plaintiff was one of eight women claiming damages from in utero exposure to DES. Pursuant to a court order, the claims were severed and plaintiff was ordered to file a separate action. However, plaintiff's complaint was deemed to have been filed on December 30, 1986, the date of the filing of the original action.

parties. MCR 2.116(G)(5); *Moss v Pacquing,* 183 Mich App 574, 579; 455 NW2d 339 (1990). All the plaintiff's well-pleaded factual allegations are accepted as true and are to be construed most favorably to the plaintiff. *Id.* at 579; *Coleman v Dowd,* 185 Mich App 662, 665; 462 NW2d 809 (1990). Summary disposition is inappropriate if a material factual question is raised by the evidence. *Moss, supra* at 579.

In the present case, the applicable limitation period is three years, MCL 600.5805(9); MSA 27A.5805(9), from the time the claim accrued, MCL 600.5827; MSA 27A.5827. Defendants argue that plaintiff's claim accrued in 1979, when plaintiff knew or through the exercise of reasonable diligence should have known that her gynecological problems were possibly related to her mother's ingestion of DES. Plaintiff asserts that even though she filed her complaint in 1986, her cause of action did not accrue until 1988, when she discovered medical records that confirmed that her mother had ingested DES, because it was not until 1988 that all the elements of her cause of action had occurred.

Plaintiff relies on *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146, 150; 200 NW2d 70 (1972), where the Court stated:

> In the case of a cause of action for damages arising out of tortious injury to a person, the cause of action accrues when all of the elements of the cause of action have occurred and can be alleged in a proper complaint.

Plaintiff claims that, because ingestion of DES by her mother is an essential element of her cause of action, accrual did not occur until she found the hospital records that proved ingestion. We disagree

that plaintiff must be able to prove her case before the statute of limitations becomes effective.

Generally, the time at which a cause of action accrues is to be determined by reference to the general accrual statute, which provides that a "claim accrues at the time the wrong upon which the claim is based was done, regardless of the time when damage results." MCL 600.5827; MSA 27A.5827. *Connelly* interpreted that language to mean that the cause of action accrues when all the elements of the cause of action have *occurred* and can be alleged in a proper complaint. *Id.* at 150. However, under *Connelly,* accrual would not be from the date that plaintiff could *prove* the elements of her cause of action, but from the date that all the elements of her cause of action had *occurred. Connelly* did not hold that the law requires *discovery* of the elements of the cause of action before the limitation period begins to run.

Subsequently, this Court has given an expansive interpretation to the statute in products liability cases involving drugs and chemicals, where damages are not immediately known, by using a discovery rule to determine when a claim accrues. See *Bonney v Upjohn Co,* 129 Mich App 18, 23; 342 NW2d 551 (1983); *Cullender v BASF Wyandotte,* 146 Mich App 423; 381 NW2d 737 (1985); *Furby v Raymark Industries, Inc,* 154 Mich App 339; 397 NW2d 303 (1986); *Stinnett v Tool Chemical Co, Inc,* 161 Mich App 467; 411 NW2d 740 (1987). See also *Larson v Johns-Manville Sales Corp,* 427 Mich 301; 399 NW2d 1 (1986), where the Supreme Court determined that the policies behind the statute of limitations are served by the use of the so-called discovery rule to determine when the cause of action accrues in an asbestos case.

In *Bonney,* a panel of this Court stated the discovery rule as follows:

A plaintiff's cause of action accrues when he discovers or, through the exercise of reasonable diligence, should have discovered that he has a *possible* cause of action [Emphasis added. *Bonney, supra* at 24, 35. See also *Cullender, supra* at 427, and *Furby, supra* at 347.]

We agree that the discovery rule should be employed in the present case. However, we find that the phrase "possible cause of action" as used in *Bonney* and the later cases inappropriately implies that a plaintiff's claim accrues once the plaintiff discovers or should have discovered that there is *any possibility* that all the elements of a cause of action exist. Rather, we believe that the proper interpretation of the discovery rule in the context of the present case is that a plaintiff's cause of action does not accrue until the plaintiff discovers or through the exercise of reasonable diligence should have discovered that the plaintiff has been injured and what a likely cause of the injury was. To trigger the running of the period of limitation, the plaintiff need only have information that would lead a reasonable person to be aware, or after diligent inquiry to become aware, of the plaintiff's injury and a likely cause of the injury. In either situation, the potential litigant will be considered to have received sufficient notice to allow the limitation period to begin to run. It is not necessary that the plaintiff be able to prove each element of the cause of action before the statute of limitations takes effect. *Fidler v Eastman Kodak Co,* 555 F Supp 87, 91 (D Mass, 1982), aff'd 714 F2d 192, 199 (CA 1, 1983).

The definition of notice and the determination of how much notice is enough to start the running of

the limitation period are problematic where the cause of the injury is itself an issue to be resolved on the merits. If proximate cause were defined in its strictest sense, a cause of action would never accrue for purposes of the statute until cause, when at issue, has been resolved at trial. In *Fidler, supra* at 199, the court recognized the difficulty and, interpreting Massachusetts law, concluded that "notice of likely cause" is ordinarily enough to start the statutory period running. "Thus on notice, the potential litigant has the duty to discover from the legal, scientific, and medical communities whether the theory of causation is supportable and whether it supports a legal claim." *Id.*

In *Bowen v Eli Lilly & Co, Inc,* 408 Mass 204; 557 NE2d 739 (1990), the Massachusetts Supreme Court followed the federal court's reasoning in *Fidler.* In Bowen, the plaintiff commenced her lawsuit fourteen years after she underwent a radical hysterectomy for a malignant vaginal tumor and twelve years after she learned her mother had taken DES while pregnant with the plaintiff. At the same time the plaintiff learned of her mother's ingestion of DES, she was informed by a medical researcher that, as a result of his study, "an important association" had been found between the ingestion of DES by pregnant women and vaginal tumors in their daughters, but it was "certainly not the sole cause" of the kind of cancer with which the plaintiff had been afflicted. After considering the history of the discovery rule in other tort actions, the Massachusetts court rejected the plaintiff's argument that the reference in *Fidler* to "notice of likely cause" means that a plaintiff must have probable cause to believe that the defendant's acts were the cause of her physical injuries before the statutory period begins to run.

"Massachusetts does not require discovery of each of the elements of the cause of action—duty, breach, causation, and damages before the limitation clock in G.L. c. 260 § 4 starts ticking . . . . Rather, the three-year limitations period commences to run when a reasonably prudent person (in the tort claimant's position), reacting to any suspicious circumstances of which he might have been aware (what the Court of Appeals in *Fidler* called 'likely cause'), should have discovered that he had been harmed by his physician's treatment." (Citations and footnote omitted.) *Malapanis v Shirazi*, 21 Mass App Ct 378, 382-383, 487 NE2d 533 (1986). We do not require that a plaintiff have notice of a breach of a duty before a cause of action may accrue, but we do require that a plaintiff have (1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was. [*Bowen, supra* at 208.]

The Massachusetts ruling is consistent with the doctrine adopted by the United States Supreme Court when it applied the discovery rule to the statute of limitations in the Federal Tort Claims Act. In *United States v Kubrick*, 444 US 111; 100 S Ct 352; 62 L Ed 2d 259 (1979), the Court recognized that the legislators, in adopting the statute of limitations, created a defense that is separate from and in addition to other defenses and that they must have been aware that application of the statute would often make it impossible for potential litigants to enforce what were otherwise perfectly valid claims. It was undisputed that Kubrick knew of his injury and its probable cause. The Court rejected arguments that a malpractice claim would not accrue until the plaintiff knew or could reasonably be expected to know of the government's breach of duty or until the plaintiff had reason to suspect or was aware of facts that would

have alerted a reasonable person to the possibility that a legal duty to him had been breached, because "either of these standards would go far to eliminate the statute of limitations as a defense separate from the denial of a breach of duty."

Although Michigan courts have not explicitly stated that a claim accrues under the discovery rule when a plaintiff discovers or should have discovered the injury and a likely cause of the injury, we believe that this interpretation of the discovery rule is more reasonable in application than the *Bonney* standard, which triggers the running of the limitation period when the potential litigant knows or should have known of a "possible cause of action." Requiring that the plaintiff have notice of injury and a likely cause of it, but not proof of each of the elements of the cause of action in order to start the limitation period, is consistent with other Michigan case law relating to the running of statutory periods of limitation. For example, our Court has held that it is not necessary that a plaintiff discover that she has suffered an invasion of a legal right or the identity of the alleged tortfeasor before a cause of action accrues, *Thomas v Process Equipment Corp,* 154 Mich App 78, 87-89; 397 NW2d 224 (1986).[2] It has also held that the accrual date of a cause of action should not be postponed until the potential litigant discovers the claim with the assistance of professionals, *Sedlak v Ford Motor Co,* 64 Mich App 61; 235 NW2d 63 (1975).

Furthermore, in products liability cases where the discovery rule has been applied, our courts have emphasized the plaintiff's knowledge of the

---

[2] Under the DES modified alternative liability theory, the plaintiff in the present case is not required to identify the tortfeasor who caused the specific harm even at the time the plaintiff files her complaint. *Abel v Eli Lilly & Co,* 418 Mich 311; 343 NW2d 164 (1984), cert den sub nom *E R Squibb & Sons, Inc v Abel,* 469 US 833 (1984).

injury and a likely cause in determining when the cause of action accrued. See, e.g., *Stinnett, supra* at 473, where the Court found that the plaintiff's cause of action accrued when he knew he had a lung problem and believed that the problem was caused by the chemicals he was exposed to at work, and *Furby, supra* at 348, where the Court emphasized the plaintiff's knowledge of his condition and its relation to his exposure to asbestos.

Applying that interpretation to the case at hand, a question arises regarding when plaintiff had sufficient notice or should have been on notice that she was harmed and what a likely cause of the harm was. Summary disposition is improper when a question of fact exists with regard to when a plaintiff discovered or should have discovered her cause of action. *Kermizian v Sumcad,* 188 Mich App 690, 694; 470 NW2d 500 (1991), relying on the rationale of *Moss, supra.*

On the basis of the present record, we conclude that a question of fact exists regarding when plaintiff knew or should have known that she had a cause of action. Plaintiff testified at deposition that, as early as 1976, she was informed that she had a "hood over her cervix" and was asked by her doctor if her mother had taken DES. The doctor also requested medical records from when plaintiff's mother was pregnant. Plaintiff was told by another doctor in 1977 that her cervix "didn't look good" and that it might be because of exposure to DES. In 1979, when plaintiff was experiencing difficulty in getting pregnant, her doctor told her that her condition was possibly caused by exposure to DES. Plaintiff was asked at deposition when she first suspected that her mother had taken DES:

*Q.* When was the first time that you learned or suspected that your mother might have taken DES?

*A.* When Dr. O'Campo noticed the hood on my cervix.

*Q.* So that was in the late '70s?

*A.* Yes, I believe.

On the basis of the foregoing, we believe that a question of fact exists regarding when plaintiff knew or, through the exercise of reasonable diligence, should have known of her cause of action. While plaintiff admits that the doctors' statements regarding a possible connection between her condition and DES could and did create a suspicion and present a possibility that her mother had ingested DES and that such exposure was possibly a cause of her injuries, we cannot on the basis of this information find, as a matter of law, that a reasonable person would have to conclude that her mother's ingestion of DES was a likely cause of her hooded cervix. This determination, however, does not preclude such a finding on remand if the court is able to conclude upon the presentation of additional undisputed facts that plaintiff was, or upon diligent investigation should have been, aware of information that would lead a reasonable person to believe that DES was a likely cause of plaintiff's hooded cervix. Otherwise, the issue is a question of fact for the factfinder. Accordingly, we conclude that, on the basis of the record before it, the trial court did not err in denying defendants' motion for summary disposition.

We affirm and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

Affirmed.

MARILYN KELLY, J., concurred in the result only.