## MASCARENAS v UNION CARBIDE CORPORATION

Docket No. 127273. Submitted June 16, 1992, at Detroit. Decided October 5, 1992, at 9:25 A.M.

Bernardo and Barbara Mascarenas brought an action in the Wayne Circuit Court, alleging products liability by Union Carbide Corporation and several other chemical companies and intentional tort by Pennwalt Corporation, Bernardo's former employer. The plaintiffs sought damages for neurological injuries to Bernardo allegedly caused by workplace exposure to solvents supplied by the chemical companies to Pennwalt in bulk containers and dispensed by Pennwalt to Bernardo in unmarked containers. Pennwalt and Fisher Scientific Company settled the claims against them. The court, John H. Hausner, J., at the close of the plaintiffs' proofs, granted summary disposition for the remaining defendants, ruling that the action was barred by the statute of limitations, that the defendants could assert as a defense to claims of failure to warn of the solvents' dangers that Pennwalt was a sophisticated user, and that the plaintiffs failed to prove exposure to the solvents and proximate causation. The plaintiffs appealed.

The Court of Appeals *held:*

1. The trial court did not err in determining that the action was barred because it had not been brought within three years of when the plaintiffs discovered or, through the exercise of reasonable diligence, should have discovered the injury and its likely cause.

2. Liability could not be imposed on the defendants for their

REFERENCES

Am Jur 2d, Products Liability §§ 324, 331, 334, 353-358, 919.

Products liability: liability of manufacturer or seller as affected by failure of subsequent party in distribution chain to remedy or warn against defect of which he knew. 45 ALR4th 777.

Statute of limitations: running of statute of limitations on products liability claim against manufacturer as affected by plaintiff's lack of knowledge of defect allegedly causing personal injury or disease. 91 ALR3d 991.

Statute of limitations: when cause of action arises on action against manufacturer or seller of product causing injury or death. 4 ALR3d 821.

alleged failure to warn of the solvents' dangers. Pennwalt was a sophisticated user whom the defendants were entitled to rely upon to warn its employees of the dangers.

3. The evidence offered by the plaintiffs to establish Bernardo's exposure to the solvents, consisting primarily of business records indicating that the defendants supplied solvents to Pennwalt, was insufficient to prove that Bernardo was exposed to the solvents.

4. The defendants' alleged failure to warn of the solvents' dangers was not the proximate cause of the injury. Pennwalt's negligence proximately caused the injury. Any additional warnings by the defendants would not have prevented the alleged injuries in light of the absence of proof that Pennwalt would have handled the solvents differently.

Affirmed.

1. LIMITATION OF ACTIONS — PRODUCTS LIABILITY — DISCOVERY RULE.

A cause of action for products liability accrues when the plaintiff discovers, or through the exercise of reasonable diligence should discover, an injury and its likely cause (MCL 600.5805[9]; MSA 27A.5805[9]).

2. PRODUCTS LIABILITY — FAILURE TO WARN OF DANGERS.

Liability may be imposed on the supplier of a product that injures a user if the product is defective or dangerous, the supplier has no reason to believe that the user will realize its defective or dangerous condition, and the supplier cannot reasonably rely on the purchaser or employer to warn ultimate users of the dangers of the product.

3. PRODUCTS LIABILITY — FAILURE TO WARN OF DANGERS — PROXIMATE CAUSE.

A plaintiff in a products liability action, in order to establish that a manufacturer's breach of its duty to warn of the product's danger was a proximate cause of the injury, must present evidence that the product would have been used differently had warnings been given.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Barry P. Waldman*), for Bernardo and Barbara Mascarenas.

*Dykema Gossett* (by *Dennis M. Haffey* and *Cheryl A. Bush*), for Union Carbide Corporation, Exxon Chemical Company, and Dow Chemical Company.

Before: Jansen, P.J., and Michael J. Kelly and Corrigan, JJ.

Corrigan, J. Plaintiffs appeal from the lower court's grant of summary disposition pursuant to MCR 2.116(C)(7) and (10) in this products liability case. We affirm.

Bernardo Mascarenas (plaintiff) was employed by the Pennwalt Corporation as a mason tender and bricklayer from 1970 to 1985. He used various solvents to clean brick, remove mortar, and perform other such tasks. Four of these products are significant to the present action: methyl ethyl ketone, acetone, toluene, and Dowclene. Defendants supplied all four products to Pennwalt in large containers, and the products were then dispensed to employees in unmarked gasoline cans.

In 1985, plaintiff was laid off. The plant where he had worked closed soon afterward. In 1986, several physicians examined him for various neurological complaints, including increasing memory loss and general deterioration of functioning. His disorder was diagnosed as organic brain syndrome caused by exposure to toxic agents.

On September 9, 1988, plaintiff sued Pennwalt, alleging an intentional tort. He also sued Union Carbide Corporation, Exxon Chemical Company, Fisher Scientific Company, and Dow Chemical Company, alleging that they had manufactured the chemicals that caused his injury. He named Pennwalt as the manufacturer of methyl ethyl ketone, Union Carbide and Exxon as the manufacturers of acetone, Fisher as the manufacturer of toluene, and Dow as the manufacturer of Dowclene. Pennwalt and Fisher subsequently settled the claims against them.

After the close of discovery, the remaining defendants moved for summary disposition pursuant

to MCR 2.116(C)(7), arguing expiration of the period of limitation, and MCR 2.116(C)(10), asserting no proof of exposure to defendants' products, no proof of proximate cause, and Pennwalt's "sophisticated user" status. The lower court ruled for defendants on all grounds.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Nichols v Clare Community Hosp,* 190 Mich App 679, 681; 476 NW2d 493 (1991). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it. *Id.* The party opposing the motion has the burden of showing that a genuine issue of disputed fact exists. *Id.* Giving the benefit of any reasonable doubt to the nonmovant, the court must determine whether a record might be developed that will leave open an issue upon which reasonable minds could differ. *Id.* at 682. This Court liberally finds a genuine issue of material fact, but where the opposing party fails to adduce evidence to establish a material factual dispute, the motion is properly granted. *Prysak v R L Polk Co,* 193 Mich App 1, 6; 483 NW2d 629 (1992).

STATUTE OF LIMITATIONS

In *Nielsen v Barnett,* 440 Mich 1, 8-9; 485 NW2d 666 (1992), our Supreme Court recently described the purpose of statutes of limitation:

> By enacting a statute of limitations, the Legislature determines the reasonable period of time given to a plaintiff to pursue a claim. *Lothian v Detroit,* 414 Mich 160, 165; 324 NW2d 9 (1982). The policy reasons behind statutes of limitations include: the prompt recovery of damages, penalizing of plaintiffs who are not industrious in pursuing claims, security against stale demands, reliev-

ing defendants' fear of litigation, prevention of fraudulent claims, and a remedy for general inconvenience resulting from delay.

The three-year limitation period for a products liability action runs from the time the claim accrues. MCL 600.5805(9), 600.5827; MSA 27A.5805(9), 27A.5827. A claim accrues when all the necessary elements have occurred and can be alleged in a proper complaint. *Thomas v Process Equipment Corp,* 154 Mich App 78, 87; 397 NW2d 224 (1986); *Grimm v Ford Motor Co,* 157 Mich App 633, 639; 403 NW2d 482 (1986). The "discovery rule" measures the accrual date of latent occupational diseases in products liability cases. *Stinnett v Tool Chemical Co,* 161 Mich App 467, 473; 411 NW2d 740 (1987), generalizing from *Larson v Johns-Manville Sales Corp,* 427 Mich 301, 308; 399 NW2d 1 (1986) (exposure to asbestos).

> [T]he proper interpretation of the discovery rule . . . is that a plaintiff's cause of action does not accrue until the plaintiff discovers or through the exercise of reasonable diligence should have discovered that the plaintiff has been injured and what a likely cause of the injury was. To trigger the running of the period of limitation, the plaintiff need only have information that would lead a reasonable person to be aware, or after diligent inquiry to become aware, of the plaintiff's injury and a likely cause of the injury. In either situation, the potential litigant will be considered to have received sufficient notice to allow the limitation period to begin to run. [*Moll v Abbott Laboratories,* 192 Mich App 724, 731; 482 NW2d 197 (1992).]

This Court has consistently held that a plaintiff's discovery of his injury does not coincide with his discovery that it may be legally compensable.

A plaintiff need not know he has suffered an invasion of a legal right before a cause of action accrues. *Thomas, supra* at 87 (chemical explosion in mixing tank); Huntington Woods v Wines, 122 Mich App 650, 652; 332 NW2d 557 (1983) (employment discrimination); *Leary v Rupp,* 89 Mich App 145, 149; 280 NW2d 466 (1979) (medical malpractice); *Patterson v Estate of Flick,* 69 Mich App 101, 104; 244 NW2d 371 (1976) (medical malpractice). Nor is a cause of action held in abeyance until a plaintiff obtains professional assistance to determine the existence of a cause of action. *Grimm, supra* at 639; *Huntington Woods, supra* at 652; *Stoneman v Collier,* 94 Mich App 187, 193; 288 NW2d 405 (1979); *Sedlak v Ford Motor Co,* 64 Mich App 61, 63; 235 NW2d 63 (1975). The *Sedlak* Court explicitly noted:

> It would be an extremely dangerous rule of law that the accrual date of a cause of action is held in abeyance indefinitely until a prospective plaintiff obtains professional assistance to determine the existence of a possible cause of action. [*Id.*]

If a question of fact exists as to when a plaintiff discovered or should have discovered a cause of action, then summary disposition is improper. *Moll, supra* at 735. See also, e.g., *Cullender v BASF Wyandotte Corp,* 146 Mich App 423, 427; 381 NW2d 737 (1985); *Bonney v Upjohn Co,* 129 Mich App 18, 35; 342 NW2d 551 (1983). A court may nonetheless conclude that no genuine issue of fact exists as to when the plaintiff discovered, or should have discovered, his claim. *Moss v Pacquing,* 183 Mich App 574, 581; 455 NW2d 339 (1990); *Kullman v Owens-Corning Fiberglas Corp,* 943 F2d 613, 616 (CA 6, 1991).

This case is distinguishable from *Bonney, Cul-*

*lender,* and *Moss, supra.* Medical examinations in 1986 revealed that plaintiff had been experiencing symptoms of exposure to toxic chemicals for the preceding several years. Plaintiff himself had associated his neurological symptoms with exposure to toxic fumes as early as 1982 or 1983. See *Stinnett, supra,* and *Kullman, supra,* where the courts relied on the plaintiffs' own statements to find their causes barred. Plaintiff in this case knew no later than 1983 that he was suffering damages associated with defendants' products.

Plaintiff has produced no contrary evidence. Instead, he argues for a 1986 accrual date—when a neurologist first specifically diagnosed and informed his wife of the probable cause of his condition. Plaintiff's position is inconsistent with Michigan case law, discussed *supra.* The lower court properly found no material question of fact. Plaintiff's cause of action accrued before September 9, 1985, the latest date that would make the present action timely.

THE "SOPHISTICATED USER" DEFENSE

Plaintiff argues next that the lower court erred in dismissing his claim on the ground that Pennwalt was a "sophisticated user" of defendants' products. We conclude that no record could be developed to allow reasonable minds to differ on this question. The lower court ruled correctly.

Michigan recognizes the "sophisticated user" defense. See *Antcliff v State Employees Credit Union,* 414 Mich 624; 327 NW2d 814 (1982). Not to do so "would lead to demonstrably unfair and unintended results." *Id.* at 640. A manufacturer's liability for failure to warn the end user of potential hazards is considered in 2 Restatement Torts, 2d, § 388. This Court in *Tasca v GTE Products*

*Corp,* 175 Mich App 617, 624; 438 NW2d 625 (1988), summarized § 388 by saying:

> [Section] 388 imposes liability on the supplier of a product which injures the user if (1) the product is defective or dangerous, (2) the supplier has no reason to believe the user will realize its defective or dangerous condition, and (3) the supplier cannot reasonably rely on the purchaser/employer to warn the ultimate users of the product of the danger. *Goodbar v Whitehead Bros,* 591 F Supp 552, 556 (WD Va, 1984), aff'd sub nom *Beale v Hardy,* 769 F2d 213 (CA 4, 1985).

In *Tasca,* the plaintiff alleged injury from exposure to cobalt dust at work. The defendants conceded their failure to warn either the plaintiff or his employer of the hazards of cobalt, and their reliance on the employer's knowledge of such hazards. This Court upheld summary disposition because the plaintiff's employer, as a "sophisticated user" of the defendants' products, was "in the best position" to warn the plaintiff of the danger. *Id.* at 626-627. See also *Kudzia v Carboloy Division, General Electric Co,* 190 Mich App 285, 288; 475 NW2d 371.(1991).

In *Kennedy v Mobay Corp,* 84 Md App 397; 579 A2d 1191 (1990), aff'd 325 Md 385; 601 A2d 123 (1992), a case factually similar to this, the plaintiffs were employees of a corporation that purchased chemicals in bulk from various manufacturers. They alleged injury from exposure to the fumes and by-products of the defendants' products, claiming failure to warn. After the jury was instructed on the sophisticated user defense, the defendants prevailed. The appellate court affirmed:

> [T]he defense is not only logical but necessary. Where it is impracticable for the supplier to give

adequate warnings directly to all who may use or come into contact with the product, some substitute for such direct warnings is required, even in strict liability cases. . . . As comment n to Restatement § 388 makes clear, the focus remains on the conduct of the supplier, but that conduct is judged in light of the circumstances. Among those circumstances are the feasibility of giving direct warnings to all who are entitled to them and, where that is not feasible, whether the supplier acted in a manner reasonably calculated to assure either that the necessary information would be passed on to the ultimate handlers of the product or that their safety would otherwise be attended to. In such a situation, that is all that reasonably can be asked and it is all, we think, that the law requires. [*Id.* at 413.]

The lower court did not err. Plaintiffs submitted numerous examples of Pennwalt's negligence, but no evidence that Pennwalt was not a sophisticated user. Yet, as a chemical manufacturer, Pennwalt obviously knew of the need for protection from such products. Had the issue been whether Pennwalt adequately protected its employees, a genuine issue of fact would have remained. But the issue is whether plaintiff's employer was a sophisticated user of Dowclene and acetone. Reasonable minds could not differ on the conclusion that it was.

Nor could a jury properly find that defendants unreasonably relied on Pennwalt to warn plaintiff of the hazards of misuse. Defendants supplied their products in bulk. Plaintiff worked with smaller quantities that he received in gasoline cans. Given the physical impossibility of labeling a liquid, other than by labeling its container, and defendants' lack of control over the containers in which their products were subsequently placed, reasonable minds could not find defendants liable for relying on Pennwalt.

### PROOF OF EXPOSURE AND PROXIMATE CAUSE

The lower court also correctly concluded that plaintiff failed to present any evidence of exposure to defendants' products and that his alleged exposure to defendants' products was the proximate cause of his injury.

A prima facie products liability case consists of proof (1) that the defendant has supplied a defective product and (2) that this defect has caused injury to the plaintiff. *Johnson v Chrysler Corp,* 74 Mich App 532, 537; 254 NW2d 569 (1977). The threshold requirement is the identification of the injury-causing product and its manufacturer. *Abel v Eli Lilly & Co,* 418 Mich 311, 324; 343 NW2d 164 (1984).

### PROOF OF EXPOSURE

Plaintiff's burden here resembles plaintiffs' burdens in suits against asbestos manufacturers. In *Barlow v John Crane-Houdaille, Inc,* 191 Mich App 244, 249; 477 NW2d 133 (1991), this Court adopted the standard for establishing exposure to asbestos products in *Roberts v Owens-Corning Fiberglas Corp,* 726 F Supp 172 (ED Mich, 1989):

> Michigan follows the test of proximate causation stated in Section 431 of the Restatement (Second) of Torts. *Brisboy v Fibreboard Corp,* 429 Mich 540, 548; 418 NW2d 650, 653 (1988). Under Section 431, a plaintiff cannot establish the requisite connection between his injury and a particular asbestos product manufacturer by merely showing that the asbestos manufacturer's product was present somewhere at his place of work. [726 F Supp 174.]

Plaintiff never produced evidence of his exposure to either acetone or Dowclene, the only prod-

ucts still at issue. Plaintiff simply produced business records showing that a supplier sold acetone to Pennwalt from 1970 to 1985 and that Dow apparently sold Dowclene to Pennwalt from 1970 to 1972. Pennwalt's purchase of acetone and Dowclene does not prove plaintiff's exposure to these substances. In answers to interrogatories, Pennwalt said only that plaintiff "may have used" acetone and Dowclene. In affidavits, plaintiff's coworkers recalled using "ketones and toluene." They did not mention acetone or Dowclene. Another former Pennwalt employee had dispensed acetone, but could not recall dispensing any to plaintiff. Plaintiff has failed to meet the *Roberts* standard. An essential element of his claim is missing. Further, nothing supports the conclusion that an adequate record could be developed at trial.

PROXIMATE CAUSE

Liability does not attach unless an actor's negligent conduct is a proximate or legal cause of the harm suffered. An indispensable element of a products liability case is proof that the manufacturer's alleged negligence proximately caused the plaintiff's injury. *Nichols, supra* at 684; *Brisboy v Fibreboard Corp,* 429 Mich 540, 547; 418 NW2d 650 (1988). When a number of factors contribute to produce an injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in producing the injury. *Id.* Products liability actions grounded in negligence require a causal connection between the manufacturer's negligence or product defect and the plaintiff's injury. *Spencer v Ford Motor Co,* 141 Mich App 356, 361; 367 NW2d 393 (1985).

The trial court correctly found that plaintiff

failed to show that a failure to warn concerning either of the remaining defendants' products proximately caused plaintiff's injury. Even plaintiff's own expert could not associate "organic brain syndrome" with any particular product, saying only that plaintiff's condition "result[ed] from years of exposure to vapors from volatile solvents." The same expert acknowledged that "these solvents have permissible exposure limits" and at least implied that, when used correctly, are not hazardous. Testimony showed that Pennwalt did not protect its employees from the effects of toxic substances. Even if acetone or Dowclene was the agent responsible for plaintiff's condition, Pennwalt's negligence proximately caused his injury. If reasonable minds could not differ regarding the proximate cause of a plaintiff's injury, the court should rule as a matter of law. *Vsetula v Whitmyer,* 187 Mich App 675, 682; 468 NW2d 53 (1991); *Derbeck v Ward,* 178 Mich App 38, 44; 443 NW2d 812 (1989); *Bullock v Gulf & Western Mfg,* 128 Mich App 316, 319; 340 NW2d 294 (1983).

Finally, even if defendants' alleged negligence had been overcome by increased warnings, the result to plaintiff would have been the same. To establish a prima facie case that a manufacturer's breach of its duty to warn was a proximate cause of an injury sustained, a plaintiff must present evidence that the product would have been used differently had the warnings been given. *Ferlito v Johnson & Johnson Products, Inc,* 771 F Supp 196, 199 (ED Mich, 1991) (manufacturer of cotton batting not liable under Michigan law for failure to warn that it was inflammable). See, e.g., *Van Dike v AMF Inc,* 146 Mich App 176, 182; 379 NW2d 412 (1985) (manufacturer of trampoline not liable for failure to use a larger warning label absent proof that the plaintiff would have taken additional

precautions to avoid injury); *Dunn v Lederele Laboratories,* 121 Mich App 73, 85; 328 NW2d 576 (1982) (manufacturer of polio vaccine not liable when physician admittedly stopped reading warning materials and would have administered vaccine despite added warnings).

A critical link in the chain of causation is missing in this case: a demonstration that improved warning labels on the acetone and Dowclene bulk containers would have led to Pennwalt's improved application of the solvents. Plaintiff's case thus fails on this issue.

Affirmed.